Dale VOGEL and Alice Vogel, Plaintiffs-Respondents-
Cross Appellants-Petitioners,

v.

GRANT-LAFAYETTE ELECTRIC COOPERATIVE, a domestic
corporation and Federated Rural Insurance Corpora-
tion, a domestic corporation, Defendants-Appellants-
Cross Respondents.

Supreme Court

*No. 94–0822. Oral argument April 2, 1996.—Decided June 5,
1996.*

(Also reported in 548 N.W.2d 829.)

416

For the plaintiffs-respondents-cross appellants-petitioners there were briefs by *Scott Lawrence* and *Lawrence & Des Rochers, S.C.*, St. Nazianz and oral argument by *Scott Lawrence.*

For the defendants-appellants-cross respondents there was a brief by *Denis R. Vogel, Stuart G. Monschein, Jennifer S. McGinnity* and *Wheeler, Van Sickle & Anderson, S.C.*, Madison and oral argument by *Stuart G. Monschein.*

Amicus curiae brief was filed by *Mark S. Henkel* and *Terwilliger, Wakeen, Piehler & Conway, S.C.*, Stevens Point for the Wisconsin Utilities Association, Inc.

Amicus curiae brief was filed by *Frank Jablonski*, Madison for the Wisconsin Farmers Union.

Amicus curiae brief was filed by *Mark L. Thomsen* and *Cannon & Dunphy, S.C.*, Brookfield and *Edward E. Robinson*, and *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.*, Milwaukee for the Wisconsin Academy of Trial Lawyers.

ANN WALSH BRADLEY, J. The plaintiffs, Dale and Alice Vogel, seek review of a decision of the court of

appeals,[1] reversing in part a judgment in their favor for damages caused by stray voltage from electricity distributed by the defendant, Grant-Lafayette Electric Cooperative (GLEC). The Vogels assert that the court of appeals erred in holding as a matter of law that stray voltage may not be considered a private nuisance. Because we conclude that private nuisance is a viable cause of action under the facts of this case, we reverse that portion of the court of appeals' decision directing the circuit court to strike the nuisance-related damages from the judgment. We further conclude that because the stray voltage constituted an unintentional invasion and was otherwise actionable under negligence, the circuit court properly considered the Vogels' contributory negligence when it reduced the total damage award. The following background facts are undisputed. The Vogels were dairy farmers and members of GLEC, a cooperative association that distributes electricity to its members. Shortly after the Vogels built a new milking facility in 1970, they noticed problems with their herd. Many cows exhibited violent or erratic behavior while in the facility. The herd also suffered from excessive and chronic mastitis. As a result, the Vogels suffered a decline in their herd's milk production and cows were repeatedly culled from the herd. Despite the fact that the Vogels made various changes with their equipment and in the facility itself, these problems persisted in varying degrees over subsequent years.

In March of 1986, the Vogels contacted GLEC because they suspected that the cows were suffering from the effects of excessive stray voltage. The Vogels received their electricity via a distribution system

---

[1] *Vogel v. Grant-Lafayette Elec. Coop.*, 195 Wis. 2d 198, 536 N.W.2d 140 (Ct. App. 1995).

referred to as a multi-grounded neutral system, based on the fact that neutral wires in both the provider's primary system and the farm's secondary wiring system are connected to metal grounding rods driven into the earth. Because the neutral wires in a typical farm's electrical system are connected to metal work in the barn for safety purposes in order to provide a path for electrical current to flow to earth, a cow that contacts grounded metal objects may provide a path for this "stray voltage" traveling on the farm's secondary system.

GLEC responded to the Vogels' concerns about possible stray voltage by installing an "isolator" at its transformer on the Vogel farm, which is intended to reduce the risk of excessive stray voltage. After the isolator was properly installed, the behavior of the herd and the other problems began to improve immediately. GLEC subsequently visited the farm on numerous occasions to conduct tests and respond to other concerns raised by the Vogels.

In 1992, the Vogels filed suit against GLEC on theories of negligence and nuisance. They alleged that GLEC was negligent with respect to the maintenance of its system and that its negligence resulted in unreasonably high levels of stray voltage through their farm which caused substantial economic damage. The Vogels also alleged that GLEC had created a nuisance, and they sought recovery for damages for their "annoyance and inconvenience" caused by the stray voltage. GLEC denied these allegations and affirmatively alleged that the Vogels were contributorily negligent in the design, maintenance, and operation of their electrical equipment.

The case was tried to a jury, which found that GLEC was negligent and that it had created a nui-

sance. It awarded the Vogels $240,000 in economic damages on their negligence claim and $60,000 for annoyance and inconvenience damages on their nuisance claim. The jury also found that the Vogels were one-third causally negligent.

Both GLEC and the Vogels filed motions after verdict. GLEC moved the court to strike the amount awarded for annoyance and inconvenience on the grounds that damages for stray voltage are not recoverable in nuisance as a matter of law. The Vogels sought entry of judgment in the amount of $300,000, arguing that the nuisance constituted an "intentional invasion" not subject to reduction for their contributory negligence. The trial court denied both requests and entered judgment in favor of the Vogels in the amount of $200,000, reducing the jury's $300,000 damage award by one-third for the Vogels' contributory negligence.

GLEC appealed, challenging the application of the nuisance doctrine to stray voltage claims, and the Vogels cross-appealed, challenging the circuit court's reduction of the jury's damage award. The court of appeals held that because private nuisance is inapplicable to stray voltage claims, the circuit court erred in submitting the Vogels' nuisance cause of action to the jury. *Vogel v. Grant-Lafayette Elec. Coop.*, 195 Wis. 2d 198, 212, 536 N.W.2d 140 (Ct. App. 1995). It directed the court to strike the $60,000 in damages awarded for annoyance and inconvenience attributed to nuisance. *Id.* Because the court of appeals concluded that nuisance was not applicable, it did not reach the question of whether the circuit court properly reduced the jury's award based on the Vogels' contributory negligence. *Id.* at 205-06.

Three issues are presented for review by the Vogels: (1) whether the doctrine of private nuisance

applies to stray voltage claims; (2) whether the circuit court erred in refusing to submit the nuisance question to the jury on an intentional invasion theory; and (3) whether damages for annoyance and inconvenience are recoverable in negligence, even if they are not recoverable under a private nuisance theory. We will discuss each issue in turn, along with any additional relevant facts.

## I. PRIVATE NUISANCE ACTION FOR STRAY VOLTAGE

We first consider whether the doctrine of private nuisance applies to stray voltage claims. The Vogels assert that private nuisance is a viable theory of recovery for stray voltage claims because it constitutes an invasion by the utility of another's interest in the private use and enjoyment of land. GLEC argues that the court of appeals correctly determined that private nuisance is inapplicable to stray voltage claims, and, therefore, the circuit court erred when it submitted the nuisance verdict question and instruction to the jury.

A circuit court has wide discretion as to the instructions and special verdicts given to a jury, provided that they adequately cover the law applicable to the facts. *See Kolpin v. Pioneer Power & Light Co.*, 162 Wis. 2d 1, 32, 469 N.W.2d 595 (1991). The question at issue here is not the sufficiency of credible facts to warrant sending the nuisance issue to the jury. Rather, the question is whether damages caused by stray voltage are recoverable in a private nuisance cause of action. Whether the facts of a particular case fulfill a legal standard is a question of law we review de novo. *See Nottelson v. DILHR*, 94 Wis. 2d 106, 116, 287 N.W.2d 763 (1980).

422

This court has previously adopted the definition of private nuisance set forth in the Restatement (Second) of Torts (1979).[2] The Restatement defines nuisance as "a nontrespassory invasion of another's interest in the private use and enjoyment of land." Restatement (Second) of Torts § 821D. "The phrase 'interest in the private use and enjoyment of land' as used in § 821D is broadly defined to include any disturbance of the enjoyment of property." *Prah v. Maretti*, 108 Wis. 2d 223, 232, 321 N.W.2d 182 (1982).

GLEC argues that the concept of invasion in the Restatement necessarily involves a "unilateral encroachment." It contends that a nuisance is produced by an activity under the defendant's control to which the plaintiff objects, and not by activity which the plaintiff has requested and facilitated. According to GLEC, the Vogels' act of requesting electrical service and cooperating in the receipt of electricity by connecting its system to GLEC's distribution system negates the concept of unilateral invasion and thus defeats a claim for nuisance.

The court of appeals agreed with GLEC and concluded as a matter of law that the provision of electricity to the Vogels' farm cannot be considered a nuisance because it does not constitute the type of invasion on which nuisance liability is typically predicated. According to the court of appeals, "[a]s users of an instrumentality they invited onto their land, and have in many ways benefited from over the years, we do not

___

[2] *See e.g., Crest Chevrolet v. Willemsen*, 129 Wis. 2d 129, 138, 384 Wis. 2d 692 (1986); *Prah v. Maretti*, 108 Wis. 2d 223, 231, 321 N.W.2d 182 (1982); *CEW Management Corp. v. First Federal Sav. & Loan Ass'n*, 88 Wis. 2d 631, 633, 277 N.W.2d 766 (1979); *State v. Deetz*, 66 Wis. 2d 1, 16-18, 224 N.W.2d 407 (1974) (using what is now the Restatement position).

think they now may be heard to claim that the instrumentality has illegally 'invaded' their property." *Vogel*, 195 Wis. 2d at 212.

Both the court of appeals and GLEC rely on previous Wisconsin nuisance cases to support the proposition that the Vogels' request for electric service and cooperation in receiving the service precludes a nuisance cause of action. Summarizing these cases, the court of appeals stated:

> The common thread in these cases is an "invasion" of the plaintiffs' land: an objectionable activity either undertaken by the defendants or within their control, which has subjected the plaintiffs to an unwanted and harmful interference with the use of their land. In no case has the activity causing the alleged interference been either agreed to or requested by the plaintiffs, as is the situation here.

*Id.* at 211.[3]

---

[3] The court of appeals and GLEC cite the following cases to support the propositions that the invasion must be unilateral and not be requested by the plaintiffs: *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 676, 476 N.W.2d 593 (Ct. App. 1991) (toxic chemicals deposited in a landfill which seeped or leached onto the plaintiffs' property and contaminated their well water was the type of "invasion" that would subject the defendants to nuisance liability); *Crest, supra* n.2 (diversion of surface water onto the plaintiff's property); *Krueger v. Mitchell*, 112 Wis. 2d 88, 332 N.W.2d 733 (1983) (excessive noise from an airport interfering with the operation of a neighboring business); *CEW Management Corp., supra* n.2 (failure to prevent rainwater and soil runoff caused by stripping of vegetation from entering adjoining lands); *Jost v. Dairyland Power Coop.*, 45 Wis. 2d 164, 172 N.W.2d 647 (1969) (discharge of sulphur dioxide gases from an electrical generating plant onto adjoining cropland).

The Vogels argue that GLEC's interpretation of an invasion as requiring a unilateral action unduly limits the doctrine of nuisance. Further, they assert that while it is true that they requested electrical service, it does not follow that they requested excessive levels of stray voltage. Therefore, the Vogels maintain that their request for electric service cannot itself negate the possibility of an invasion of their interest in the private use and enjoyment of land by excessive stray voltage flowing onto their farm.

We agree with the Vogels that their request for electric service itself does not negate the invasion element of nuisance. Both GLEC and the court of appeals fail to distinguish between electrical service generally and excessive levels of stray voltage which may accompany it. While the Vogels requested electric service, they did not request excessive stray voltage to flow through their farm. Similarly, while they received benefit from the electrical service generally, the evidence presented at trial indicates that they hardly benefited from excessive stray voltage.

We find no support in the language of the Restatement to support GLEC's unilateral invasion theory of nuisance. Further, such an interpretation is inconsistent with language of the Restatement. Under the Restatement, a nuisance may be premised on an invasion of an interest of another's use and enjoyment of land that is "unintentional and otherwise actionable under the rules controlling liability for negligent . . . conduct." Restatement (Second) of Torts § 822(b). When an unintentional invasion results from negligent conduct, the plaintiff's contributory negligence is a defense to the same extent as in other actions founded on negligence. Restatement (Second) of Torts § 840B. *See also Schiro v. Oriental Realty Co.*, 272 Wis. 537,

545-47, 76 N.W.2d 355 (1956). Therefore, GLEC's position that there must be a unilateral invasion is inconsistent with the existence of a contributory negligence defense in a nuisance action involving an unintentional invasion.

We also disagree with the court of appeals that previous nuisance cases in Wisconsin compel the conclusion that stray voltage does not constitute the type of invasion on which nuisance liability is predicated. The court of appeals erroneously focusses on private nuisance as an invasion of land. For example, the court of appeals states that "[t]he common thread in these cases is an 'invasion' of ... *land* ...." *Vogel*, 195 Wis. 2d at 211 (emphasis added). Interpreting this court's decision in *Prah*, the court of appeals states that "nothing in [*Prah*] abrogates, or even dilutes, the requirement that there be an *invasion* of *property* in order for a nuisance to exist under the Restatement rule." *Vogel*, 195 Wis. 2d at 212 (emphasis added).

However, the Restatement defines nuisance as a "*nontrespassory* invasion of another's interest in the private use and enjoyment of land." Restatement (Second) of Torts § 821D (emphasis added). *See also Prah*, 108 Wis. 2d at 231. Although some of the nuisance cases identified by the court of appeals involve a physical invasion of land, the Restatement uses the phrase "interest in the use and enjoyment of land" broadly to include more than freedom from detrimental change in the physical condition of the land itself:

> [That phrase] also comprehends the pleasure, comfort and enjoyment that a person normally derives from the occupancy of land. Freedom from discomfort and annoyance while using land is often as important to a person as freedom from physical interruption with his use or freedom from detrimen-

426

tal change in the physical condition of the land itself.... [It] is essentially an interest in the usability of land....

Restatement (Second) of Torts § 821D, cmt. b.

As one commentator has noted, "[t]he different ways and combination of ways in which the interest in the use or enjoyment of land may be invaded are infinitely variable." W.P. Keeton, *Prosser and Keeton on Torts* § 87, at 619 (5th ed. 1984). This court has previously characterized the common law doctrine of private nuisance as being both "broad" to meet the wide variety of possible invasions, and "flexible" to adapt to changing social values and conditions. *Prah*, 108 Wis. 2d at 232, 239 (recognizing that private nuisance law has the flexibility to protect both a landowner's right to access to sunlight and another landowner's right to develop land). An interpretation of nuisance as only arising from a unilateral action and a physical invasion of land restricts the essential flexibility of the nuisance doctrine. We decline to do so here.

We conclude that nuisance law is applicable to stray voltage claims because excessive levels of stray voltage may invade a person's private use and enjoyment of land. Although excessive levels of stray voltage may be found to constitute a nuisance in certain circumstances, we do not hold that it constitutes a nuisance under all circumstances. The determination of whether stray voltage unreasonably interferes with a person's interest in the private use and enjoyment of land is reserved for the trier of fact. *See Prah*, 108 Wis. 2d at 240.

Because the circuit court correctly applied the law of private nuisance under the facts presented, we con-

clude that it properly submitted the nuisance question to the jury. Accordingly, we reverse the court of appeals' decision ordering the circuit court to strike the nuisance-related damages from the judgment.

## II. "INTENTIONAL INVASION" NUISANCE

We next address the Vogels' argument that the circuit court erred in not submitting a question to the jury determining whether GLEC's invasion was intentional.[4] The Restatement differentiates between intentional and unintentional invasions of a person's interest in the private use and enjoyment of land as follows:

> One is subject to liability for a private nuisance if, but only if, [his or her] conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>
> (a) intentional and unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

Restatement (Second) of Torts § 822. According to the Restatement, "[w]hen the harm is intentional or the result of recklessness, contributory negligence is not a defense." Restatement (Second) of Torts § 840B(2).[5]

---

[4] The court of appeals did not reach this issue, having concluded that the Vogels could not a sustain a nuisance cause of action grounded in stray voltage.

[5] We note here that the parties dispute whether a nuisance based on an intentional invasion is subject to a contributory negligence defense. Despite the Vogels' assertions to the contrary, this court has not yet had occasion to determine the

At the instructions conference the Vogels requested that their nuisance claim be submitted to the jury on the theory that the stray voltage constituted an intentional invasion. The circuit court denied their request. In a motion after verdict, the Vogels sought judgment in the amount of $300,000 without reduction for their contributory negligence. They argued as a matter of law that the nuisance found by the jury constituted an intentional invasion, and therefore contributory negligence could not be used by GLEC as a defense. The court denied this motion.

■

Whether the circuit court erred by not submitting an intentional invasion question to the jury raises the same standard of review principles that we applied with respect to the court's decision to submit the nuisance issue generally. Although the circuit court has discretion in the way that it structures both the instructions and the verdict, it has a duty to instruct a jury and submit a verdict with due regard to the facts of the case. *D.L. v. Huebner*, 110 Wis. 2d 581, 624, 329 N.W.2d 890 (1983). Therefore, it is error for a court to refuse to instruct on an issue raised by the evidence. *Lutz v. Shelby Mut. Ins. Co.*, 70 Wis. 2d 743, 750, 235 N.W.2d 426 (1975).

The circuit court gave the following rationale for its decision not to include an intentional invasion instruction:

> In this case . . . what we are dealing with is an allegation of stray voltage: that is voltage which for lack of a better term escapes from the defendant utility's distribution system and causes injury to

propriety of Restatement (Second) of Torts § 840B(2) under Wisconsin law.

the plaintiff's property. Now that is not an intentional act. Obviously the supplying of the electricity is intentional and that is a service that is subscribed for by the plaintiff himself. But the stray voltage phenomenon is an act of nature or perhaps, or certainly an act of negligence maybe and is not an intended act. The intended act is for the defendant here to supply electricity to the plaintiffs' farm. And what happens by way of stray voltage, if in fact that phenomenon occurred, is not an intentional act.

It appears that the court declined to submit the intentional invasion question on the theory that stray voltage may never constitute an intentional invasion.

The Restatement defines intentional invasion as follows:

An invasion of another's interest in the use and enjoyment of land or an interference with public right, is intentional if the actor

(a) acts for the purpose of causing it, or

(b) knows that it is resulting or is substantially certain to result from his conduct.

Restatement (Second) of Torts § 825. In addition, the comments to § 825 explain:

To be "intentional," an invasion of another's interest in the use and enjoyment of land, or of the public right, need not be inspired by malice or ill will on the actor's part toward the other. An invasion so inspired is intentional, but so is an invasion that the actor knowingly causes in the pursuit of a laudable enterprise without any desire to cause harm. It is the knowledge that the actor has at the time he acts or fails to act that determines whether the invasion resulting from his conduct is intentional or unintentional. It is not enough to make an invasion

430

> intentional that the actor realizes or should realize that this conduct involves a serious risk or likelihood of causing the invasion. He must either act for the purpose of causing it or know that it is resulting or is substantially certain to result from his conduct.

Restatement (Second) of Torts § 825 cmt. c. Based on the above commentary to § 825, we disagree with the circuit court that stray voltage may never constitute an intentional invasion. For example, even absent a desire to cause harm, a provider of electricity could be liable for intentional invasion if it knows that excessive levels of stray voltage are resulting or certain to result from the operation or maintenance of its system.

The Vogels argue that the uncontradicted testimony of their expert was that GLEC knew that a portion of its electric current would travel to the earth through the farm and its structures based on its use of the multi-grounded system with interconnected neutrals. They assert that although GLEC may not have intended to cause harm, the invasion is intentional under § 825(b) because GLEC knew that the stray voltage was substantially certain to result from its conduct by application of basic laws of electricity. GLEC contends that even if it was substantially certain that some level of current would travel through the farm's structures, there is no evidence that any interference with the Vogels' use and enjoyment was certain to result.

We agree with GLEC that the mere fact that the systems were interconnected does not create an intentional invasion. As we stated previously, the invasion under the Restatement must be in another's interest in the use and enjoyment of land, not merely an invasion in the land. While some stray voltage may always

431

invade a farmer's land when using a multi-grounded system with interconnected neutrals, the Vogels concede that "it does not follow that levels of voltage and current harmful to cows' productivity and health will necessarily result from the use of a multi-grounded system." Petitioner's brief at p. 17. It is the unreasonable levels of stray voltage that may give rise to liability for an intentional invasion, not the use of a multi-grounded delivery system with interconnecting neutrals. The Vogels fail to identify any evidence in the record that GLEC had knowledge prior to March of 1986 that its system was imposing unreasonable levels of stray voltage onto the Vogels' farm.

The Vogels also argue that GLEC's conduct constitutes an intentional invasion because it was a continuing invasion of which they had knowledge. *See Jost*, 45 Wis. 2d at 173-74. The Restatement provides that unintentional invasions that continue may constitute an intentional nuisance:

> *Continuing or recurrent invasions.* Most of the litigation over private nuisances involves situations in which there are continuing or recurrent invasions resulting from continuing or recurrent conduct . . . . In these cases the first invasion resulting from the actor's conduct may be either intentional or unintentional; but when the conduct is continued after the actor knows that the invasion is resulting from it, further invasions are intentional.

Restatement (Second) of Torts § 825, cmt. d. The Vogels maintain that in this case, stray voltage arising from a multi-grounded distribution system necessarily involves a continuing invasion because the utility knows that a portion of its current is going to the earth through the farm's structures and the cows.

This argument fails in part for the same reason stated above. Intentionally supplying electrical current with the resulting stray voltage may be an invasion of the land but it does not constitute a legal cause of action in nuisance. In order for a nuisance to exist in this fact situation, there must be an unreasonable amount of stray voltage that affects the person's interest in the private use and enjoyment of land. Therefore, GLEC may be liable for an intentional invasion under the continuing invasion rationale expressed in the Restatement if it continued to impose excessive levels of stray voltage onto the Vogels' farm that might endanger their cows after it had knowledge of the problem. However, that is not the case here. In fact, the record indicates the opposite.

It is undisputed that GLEC was first notified about the Vogels' stray voltage concerns in March of 1986. The evidence indicates that GLEC immediately responded and worked to alleviate any problems with its delivery system. For example, it installed an isolator on the system sometime in March after the Vogels' initial complaint. According to Mr. Vogel, the problems with their herd improved immediately. Further, Mr. Vogel acknowledged at trial that he "could very well have" observed GLEC employees working on the system in the vicinity of his farm at least 50 to 60 times after notifying GLEC of his concerns, and that GLEC representatives were actually on his farm "less than half" of that many times.

Based on the record in this case, we conclude as a matter of law that the trial court did not err by construing the nuisance action as an unintentional invasion and otherwise actionable under negligence, and by not submitting the question of intentional invasion to the

jury. Because a nuisance claim based on an unintentional invasion is properly subject to the defense of contributory negligence, we affirm the circuit court's judgment reducing the amount of damages for the Vogels' contributorily negligence.[6] Based on our conclusion that the damages for "annoyance and inconvenience" are recoverable in nuisance in this case, we need not address the third issue presented regarding whether such damages are recoverable in negligence.

*By the Court.*—The decision of the court of appeals ordering the circuit court to strike nuisance-related damages from the judgment is reversed.

---

[6] Because we conclude that the Vogels' intentional invasion theory is inapplicable under the facts of this case, we need not address the issue of whether a nuisance based on an intentional invasion is subject to a contributory negligence defense, *supra* n. 5.