Russell ALLEN,
Plaintiff-Respondent-Cross-Appellant,

v.

WISCONSIN PUBLIC SERVICE CORPORATION,
Defendant-Appellant-Cross-Respondent.†

Court of Appeals

*No. 03–2690. Submitted on briefs November 30, 2004.—Decided February 15, 2005.*

2005 WI App 40

(Also reported in 694 N.W.2d 420.)

† Petition to review denied 7-28-2005.

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Trevor J. Will, Kevin P. Whaley*, and *Eric L. Maassen* of *Foley & Lardner, LLP* of Milwaukee.

On behalf of the combined brief of plaintiff-respondent-cross-appellant, the cause was submitted on the briefs of *Daniel P. Murray* and *B.J. Hammarback* of *Hammarback, Murray & Jacobson S.C.* of River Falls, and *Scott Lawrence* of *Lawrence & Des Rochers* of St. Nazianz.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Wisconsin Public Service Cor-

poration (WPS) appeals a judgment that it negligently damaged Russell Allen's dairy business with stray voltage and that WPS's electrical distribution system was a nuisance. WPS argues (1) the trial court erred when it determined that Allen took reasonable steps to discover the cause of the damage thereby removing WPS's statute of limitations defense from jury consideration; (2) the jury's award for nuisance damages is improper because Allen is not entitled to nuisance damages; and (3) if Allen is entitled to nuisance damages, the jury's million dollar award should be reduced. We conclude the trial court correctly determined that Allen took reasonable steps to discover the cause of the damage. We next conclude that WPS failed to object to the jury instruction regarding nuisance and therefore failed to preserve for appeal the right to contest the basis for the award. Finally, we conclude the evidence supports the amount of the jury's award for nuisance damages.

¶ 2. Allen cross-appeals, arguing he is entitled to (1) treble damages because WPS's failure to identify stray voltage was willful, wanton or in reckless disregard of Allen's rights and (2) an injunction requiring WPS to eliminate stray voltage from his farm. We conclude that Allen is not entitled to treble damages because WPS made sufficient efforts to discover the stray voltage. Regarding the injunction, we conclude the trial court failed to take into account whether Allen's damage award included amounts for future damages. We remand to the trial court to make that finding. Accordingly, we affirm in part, reverse in part and remand with directions.

## BACKGROUND

¶ 3. Allen first experienced problems on his dairy farm in 1976 when he moved his herd to a new barn and

was not satisfied with the cows' milk production. However, he was unable to locate the source of the problem. By 1988, he suspected stray voltage and asked WPS to conduct a stray voltage investigation. WPS performed the test but did not discover stray voltage.

¶ 4. The problems persisted through 1994. That year, Allen installed a new milking parlor in an attempt to remedy the problem. However, milk production did not improve so Allen tried other things to increase production. He testified that he went over every area of the farm to make sure "everything was up to snuff" and to make sure he was not "doing anything wrong."

¶ 5. By 1997, there was still no improvement. In 1997, Allen contacted an electrician, Larry Neubauer, to investigate for stray voltage. Neubauer concluded there was stray voltage and that it was caused by WPS. However, Allen was not convinced so Neubauer suggested having WPS come out and test again. As in 1988, WPS again said there was no stray voltage problem. It offered to install a Dairyland Isolator at the farm, which would separate WPS's distribution system from the farm's electrical system. The isolator was installed in July 1997. Milk production improved for a few days but then the problems returned. Allen called WPS again and showed them Neubauer's readings. WPS stated the problems were due to issues on the farm, not stray voltage.

¶ 6. Neubauer suggested a different isolation system similar to the Dairyland Isolator. He installed it in December 1997. The herd's health and behavior improved and milk production increased in 1998. However, in 1999, the herd's behavior worsened again so Allen called Neubauer. Neubauer installed a copper ground ring around the farm to prevent current from coming onto the farm. Nevertheless, milk production

continued to decrease. Allen installed a ditch bypass wire to attempt to reduce the current. He also installed a surface ring of wire around the farm. Still there was no improvement.

¶ 7. On November 9, 2000, Allen filed suit against WPS. He alleged WPS negligently permitted stray voltage to harm his cows and that its distribution system was a nuisance.[1] A jury trial took place from May 19 through June 12, 2003. The jury determined that stray voltage from WPS's distribution system caused harm to Allen's dairy farm, that WPS was negligent in its distribution of electricity, and that WPS's negligence caused the harm. It awarded Allen $750,000 in economic damages and $1,000,000 for annoyance, inconvenience and loss of use and enjoyment of his property. The court denied postconviction motions filed by both WPS and Allen and granted judgment on the jury's verdict.

## DISCUSSION

### WPS's Appeal

## I. Statute of Limitations

¶ 8. WISCONSIN STAT. § 893.52[2] provides a six-year limitations period for negligence and nuisance claims. The accrual of a stray voltage claim is governed by the discovery rule. *Kolpin v. Pioneer Power & Light Co.*, 162 Wis. 2d 1, 24–27, 469 N.W.2d 595 (1991). Under that

---

[1] Allen's additional claims of trespass and strict liability were dismissed before trial.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

rule, a plaintiff's claim accrues when the plaintiff objectively knows, or with reasonable exercise of care should have known, the cause of the injury and the defendant's part in that cause. *Id.* Furthermore, "[a] plaintiff can rely on the discovery rule only if he or she has exercised reasonable diligence." *Jacobs v. Nor-Lake, Inc.*, 217 Wis. 2d 625, 634, 579 N.W.2d 254 (Ct. App. 1998). Reasonable diligence means "such diligence as the great majority of persons would use in the same or similar circumstances" to discover the cause of the injury. *Spitler v. Dean*, 148 Wis. 2d 630, 638, 436 N.W.2d 308 (1989). "The construction of a statute of limitations is a question of law which we review without deference to the circuit court's decision." *Kolpin*, 162 Wis. 2d at 18.

¶ 9. WPS argues that Allen began experiencing the problems more than six years before he filed suit, thought stray voltage was the cause, but failed to take steps to discover that stray voltage was in fact the cause. WPS argues that Allen acted unreasonably by failing to investigate the cause of his herd's problems. WPS contends Allen did nothing to discover the problem before 1994, even though the herd's behavior and production were substandard during that time. WPS notes that Neubauer easily diagnosed a stray voltage problem in 1997. WPS argues that if Allen had acted with reasonable diligence, he would have discovered the problem much earlier than he did. Therefore, WPS contends, Allen's claim is barred because the statute of limitations had expired before he brought this action.

¶ 10. Allen responds that this case is similar to *Kolpin*. There, Kolpin experienced problems with his herd's behavior and milk production beginning in 1977. *Id.* at 11. By 1980, Kolpin learned of the concept of stray voltage and had a hunch that it caused the herd's problems. However, he was not yet aware that the

defendant, Pioneer, was the cause of the stray voltage. In 1983, Kolpin installed an electric grounding device, after which milk production improved. It was then that Kolpin concluded Pioneer caused his herd's problems. *Id.* at 26.

¶ 11. Kolpin filed suit against Pioneer in 1987. *Id.* at 10. Pioneer argued Kolpin had discovered his claim more than six years before commencing his action. *Id.* at 14. The supreme court concluded that Kolpin did not discover, or with the exercise of reasonable care should not have discovered, that Pioneer's electrical system was the cause of the herd's problems until he installed the electric grounding device in 1983. Therefore, the court concluded, his action was commenced within the six-year statute of limitations. *Id.* at 27.

¶ 12. Based on *Kolpin*, Allen argues that he did not discover, or with the exercise of reasonable care should not have discovered, that WPS was the cause of his problems until Neubauer installed the isolation system and milk production began to improve. We agree. We conclude that, based on *Kolpin*, Allen did not know nor could he have known through reasonable diligence that WPS was the cause of his herd's problems until the isolation unit was installed and production improved. The record shows that Allen went through a reasonable process to attempt to determine the source of the problem.

¶ 13. In 1988, Allen asked WPS to come to his farm to test for stray voltage. Having been told by WPS that it could not find stray voltage, Allen attempted to look for another source of his herd's problem. He started by looking into the herd's nutrition and worked with nutritionists between 1984 and 2003. None were able to make changes to increase milk production. In 1991 he bought a new mixer feed wagon, but there was

no improvement. In 1994, his milking equipment dealer suggested installing a new milking parlor, but again milk production did not increase.

¶ 14. In 1997, the milking equipment dealer suggested having an electrician test for stray voltage. This is when Neubauer determined Allen had a problem with stray voltage. Allen called WPS and asked them to perform another test, but again WPS said he had no problem. Allen then proceeded to purchase the Dairyland Isolator at WPS's suggestion. The herd's behavior and production improved, but only for a few days. WPS went to the farm again and told Allen that his problems were "on-farm problems," thereby again denying there was any stray voltage on the farm. Allen then had Neubauer install a new isolator in January 1998 and finally the herd's behavior and production improved. It was after this new isolator was installed that Allen could objectively know that WPS's electrical system was a cause of the damage to his dairy operation.

¶ 15. Although WPS argues that Allen should have discovered the problem earlier, WPS went to the farm three times and told Allen there was no problem. Allen cannot be faulted for accepting the results of WPS's testing and continuing to search for other possible sources of the problem. Furthermore, as we discuss later, in its response to Allen's cross-appeal argument that he is entitled to treble damages, WPS argues that as a matter of scientific fact there was no stray voltage problem. We are unpersuaded by WPS's contention that Allen failed to use reasonable diligence to discover a problem WPS could not find and contends never existed in the first place.

¶ 16. WPS further argues, however, that *Kolpin* does not apply because the supreme court was not asked to address the issue of reasonable diligence to

investigate stray voltage. WPS argues that issue was not in question in *Kolpin* as it is here. WPS maintains the jury should have been given the opportunity to determine whether Allen used reasonable diligence. However, we conclude that the principles underlying *Kolpin* address the issue and, in fact, the *Kolpin* court did touch upon reasonable diligence, even if it did not use that exact phrase. The supreme court noted:

> Because of the difficulties in pinpointing the exact source of stray voltage, it is difficult for a plaintiff to determine the relationship between the stray voltage and its source. The source could be the plaintiff's own electrical wiring, a defect in the milking parlor, or an improperly grounded line leading to the barn. But in this case, once the Kolpins found the solution to their problem, they were able to trace it to the cause of their problem—Pioneer's distribution system. The "discovery" was more of a process of elimination of possible causes rather than a process of determination of the cause.

*Kolpin*, 162 Wis. 2d at 26–27. In this way, the supreme court noted that Kolpin went through a reasonable process of investigating the cause of his problems by eliminating other possible causes. Similarly, Allen went through a reasonable process of eliminating other possible causes until Neuberger installed the isolator and objectively discovered the relationship between the stray voltage and WPS. We conclude that, as a matter of law, on the undisputed facts of this case as described above, the record establishes that Allen exercised reasonable diligence to investigate the source of his herd's problems.

¶ 17. Furthermore, the jury instruction and verdict question regarding Allen's own negligence effec-

tively addressed this issue even were we not to conclude that Allen used reasonable diligence as a matter of law. The jury was instructed:

> The failure to exercise ordinary care to discover an unsafe electrical condition on the farm, even if it does not involve his own equipment, can also be negligence. However, if the defective electrical condition on the farmer's equipment or facilities is such that it was not known or would not have been [dis]covered by the exercise of ordinary care, the farmer is not negligent in permitting it to exist in such condition.

The jury was then asked to answer the verdict question, "Was Russell Allen, his agents or employees negligent in the use of electricity on his farm?" The jury answered "No." In order to reach that conclusion, the jury had to determine that Allen exercised ordinary care "to discover an unsafe electrical condition on the farm," such as stray voltage. Thus, the question WPS wanted the jury to consider was, in effect, answered, and the record supports the answer.

## II. Award for Nuisance Damage

¶ 18. WPS argues that Allen is not entitled to an award for "annoyance, inconvenience and loss of use and enjoyment of his property" because it is an award for uncompensable mental distress. We conclude that WPS has not preserved this argument for appeal. WPS argues that the jury instruction did not properly define the requisites for nuisance damages. However, WPS has not shown that it objected to the jury instruction or that it offered an alternative jury instruction that defined nuisance damages as it does on appeal. *See* WIS. STAT. § 805.13(3).

¶ 19. WPS also argues that Allen's attorney, in his closing argument, was actually arguing for mental distress damages rather than nuisance damages. WPS maintains that Allen testified he was entitled to nuisance damages merely because his enjoyment of working on the farm was lessened by the problems his herd suffered. WPS argues this is mental distress, not nuisance, which it contends requires "discomfort due to a sensory irritation." However, WPS does not show that it objected to Allen's attorney's argument.

¶ 20. Because WPS did not object to the jury instruction or Allen's arguments during trial, the trial court was never given an opportunity to consider the arguments and make a ruling that this court could review. *See State v. Rogers*, 196 Wis. 2d 817, 829 n.5, 539 N.W.2d 897 (Ct App. 1995). "[T]he appellant [must] articulate each of its theories to the trial court to preserve its right to appeal." *Id.* at 829. This rule is "not merely a technicality or a rule of convenience; it is an essential principle of the orderly administration of justice." *State v. Huebner*, 2000 WI 59, ¶ 11, 235 Wis. 2d 486, 611 N.W.2d 727. "The rule promotes both efficiency and fairness, and 'go[es] to the heart of the common law tradition and the adversary system.' " *Id.* (quoting *State v. Caban*, 210 Wis. 2d 597, 604–05, 563 N.W.2d 501 (1997)). The rule serves several important objectives:

> Raising issues at the trial court level allows the trial court to correct or avoid the alleged error in the first place, eliminating the need for appeal. It also gives both parties and the trial judge notice of the issue and a fair opportunity to address the objection. Furthermore, the waiver rule encourages attorneys to diligently prepare for and conduct trials. Finally, the rule prevents attorneys from "sandbagging" errors, or failing to object to

an error for strategic reasons and later claiming that
the error is grounds for reversal.

*Huebner*, 235 Wis. 2d 486, ¶ 12 (citations omitted).
This "rule is essential to the efficient and fair conduct of
our adversary system of justice." *Id.* Because WPS did
not raise the issue at trial, we do not address it.

## III. Remittitur of Nuisance Damage Award

¶ 21. WPS argues that if Allen is entitled to
nuisance damages, the one million dollar award should
be reduced. "If there is any credible evidence which
under any reasonable view supports the jury finding as
to the amount of damages, especially where the verdict
has the approval of the trial court, this court will not
disturb the finding unless the award shocks the judicial
conscience." *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397,
446, 405 N.W.2d 354 (Ct. App. 1987).

¶ 22. The jury awarded Allen $750,000 in eco-
nomic damages and one million dollars in nuisance
damages. WPS contends that the nuisance award is
excessive and greatly exceeds damage awards in other
stray voltage cases. For example, in *Vogel v. Grant-
Lafayette Elec. Co-op*, 201 Wis. 2d 416, 432, 548 N.W.2d
829 (1996), the jury awarded the plaintiff $240,000 in
economic damages and $60,000 for inconvenience and
annoyance. Thus, the award for inconvenience and
annoyance was 25% of the award for economic dam-
ages.

¶ 23. We conclude that the nuisance award here
was not excessive in light of Allen's experience ulti-
mately leading to finding the source of his herd's
problems. He began experiencing problems in 1976, and

was not able to conclude that WPS was the source of the problem until the second isolator was installed in 1997. Until the time of trial, he was still experiencing problems. He called WPS to his farm on multiple occasions to test for stray voltage, and each time WPS told him he did not have a problem or that the problem was on his farm and not a result of WPS's electrical system. Consequently, Allen continued to search for sources of the problem. For more than two decades Allen's cows' behavior was difficult to control and the farm suffered from decreased milk production. Allen testified that by 1997 he was "heading for bankruptcy" as a result of the problems he was experiencing. Even though the jury's award here exceeded awards in other reported stray voltage cases, we conclude the award is justified under the circumstances of this case.

### *Allen's Cross-Appeal*

## I. Treble Damages

¶ 24. WISCONSIN STAT. § 196.03(1), states, "Subject to s. 196.63, a public utility shall furnish reasonably adequate service and facilities." WISCONSIN STAT. § 196.64(1) provides for an award of treble damages when a public utility willfully, wantonly, or recklessly violates its statutory duties. The plaintiff must prove entitlement to treble damages by clear and convincing evidence. WIS. STAT. § 196.64(2).

█

¶ 25. WPS's conduct was wanton, willful and in reckless disregard of Allen's rights if it demonstrated an indifference to the consequences of its actions, even though it may not have intended insult or injury. *See Sharp v. Case Corp.*, 227 Wis. 2d 1, 21, 595 N.W.2d 380

(1999). The trial court dismissed Allen's request for treble damages because it determined there was no evidence that WPS acted in a manner that was willful, wanton or reckless. We agree and conclude a jury could not have found by clear and convincing evidence that WPS acted with indifference to the consequences of its actions.

¶ 26. Allen gives several examples of what he claims is evidence of WPS's willful, wanton or reckless disregard of his rights. Without addressing each specifically, taken cumulatively they do not support a claim for treble damages. WPS attempted to find the stray voltage on Allen's farm, but concluded there was no problem. WPS conducted stray voltage testing on Allen's farm on several occasions, using a variety of tests. In none of these visits did WPS detect current exceeding one milliampere. Despite Allen's arguments that WPS falsified the results of the testing, the record does not support those allegations.

¶ 27. WPS points to studies by the United States Department of Agriculture and by state agencies such as the Public Service Commission of Wisconsin, which regulates WPS, that discuss an electric current's effect on dairy cattle. These sources agree that current below four milliamperes has no adverse affect on dairy cows. The USDA has determined that cows do not perceive electricity below one milliampere, and voltage at that level does not affect milk production. Both WPS's and Allen's experts found current measuring less than one milliampere on Allen's farm. WPS cannot be faulted for following plausible science when it concluded there was no problem. Consequently, Allen has not shown that

503

WPS acted willfully, wantonly or recklessly. Thus the trial court did not err in denying Allen's request for treble damages.

## II. Injunction

¶ 28. After the jury's verdict, Allen filed a motion for injunctive relief, asking the trial court to enjoin WPS from allowing stray electrical currents onto his farm. The court denied the motion stating,

> [Allen] has made an election of remedies here and has proceeded to obtain a jury verdict setting forth damages, if you will, for the nuisance that [Allen] perceives exists. And for this Court to consider an injunction subsequent to the awarding of damages for the nuisance seems not only inconsistent with Wisconsin law, but inappropriate.
>
> Now, if [Allen] were to say, well, we don't want the money, we want the injunction, then I think you have a different situation. But that's not what I'm hearing. That's not what I heard. For some reason I believe [Allen] thinks that they can have both, and I don't think that's the case.

¶ 29. Whether to grant an injunction is vested in the trial court's discretion. *Bubolz v. Dane County*, 159 Wis. 2d 284, 296, 464 N.W.2d 67 (Ct. App. 1990). "A discretionary determination will be sustained where it is demonstrably made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law." *State v. Seigel*, 163 Wis. 2d 871, 889, 472 N.W.2d 584 (Ct. App. 1991).

¶ 30. When seeking an injunction, a plaintiff must show a sufficient likelihood that the defendant's future conduct will cause the plaintiff irreparable harm. *Pure*

*Milk Prods. Co-op v. National Farmers Org.*, 90 Wis. 2d 781, 800, 280 N.W.2d 691 (1979). Irreparable harm is that which is not adequately compensable in damages. *Id.* Also, the plaintiff must lack an adequate remedy at law. *Sunnyside Feed Co. v. City of Portage*, 222 Wis. 2d 461, 472, 588 N.W.2d 278 (Ct. App. 1998).

¶ 31. Allen argues he is entitled to both money damages and injunctive relief for continuing nuisance because his farm would continue to be adversely affected by the stray voltage. He argues the jury's award for economic damages did not take into account the harm his farm would continue to suffer. However, WPS contends that a portion of the damage award Allen received did take future damages into account. Thus, it argues Allen is not also entitled to an injunction because Allen had an adequate remedy at law. WPS points to Allen's damage expert's testimony that the damages for capital loss included a calculation for the value of the herd. The expert testified that the value of Allen's herd was reduced because it was anticipated that the herd would produce less milk in the future. Thus, the capital loss that Allen asked to be compensated for included the value of milk that the cows would not produce in the future.

¶ 32. The record is unclear whether the trial court based its denial of the injunction on a consideration of a future damages component. Instead, the court simply determined that Allen could not have both money damages and an injunction. However, if the award did not take future damages into account, Allen may be entitled to an injunction. We therefore reverse the court's denial of an injunction and remand so that the trial court may determine whether Allen's damage award contains an element of future damages. Alterna-

tively, the trial court should consider whether this issue is now moot because Allen is no longer engaged in dairy farming.

*By the Court.*—Judgment and orders affirmed in part; reversed in part and cause remanded with directions.