Grace Gumz, James Gumz,
Michael Gumz and Susan Gumz,
Plaintiffs-Respondents-Cross-Appellants,

v.

Northern States Power Company d/b/a Xcel
Energy, Defendant-Appellant-Cross-Respondent.†

Court of Appeals

*No. 2005AP1424. Submitted on briefs May 22, 2006.*
*—Decided July 18, 2006.*

2006 WI App 165

(Also reported in 721 N.W.2d 515.)

† Petition to review granted 2/12/07.

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Michael F. O'Brien* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the consolidated briefs of *Scott Lawrence* of *Lawrence & Des Rochers, S.C.* of St. Nazianz; *Gregory J. Cook* of *Greg Cook Law Offices, S.C.* of Milwaukee; and *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Northern States Power Company appeals judgments and orders, entered upon a jury's verdict, in favor of James, Grace, Michael and Susan Gumz, arguing: (1) the trial court erred when it declined to give an instruction and verdict question on the

statute of limitations; (2) the trial court erroneously exercised its discretion in formulating the comparative negligence verdict question; (3) the judgments for annoyance and inconvenience must be reversed; and (4) any damages awarded must be limited to a specific time period. We disagree and affirm.

¶ 2. The Gumzes cross-appeal summary judgment in Northern's favor, dismissing their treble damages claim. They assert the court bypassed an essential element of summary judgment methodology. Again, we disagree and affirm.

## Background

¶ 3. James and Michael Gumz purchased their parents' dairy herd and farm in July 1981. In 1991, the Gumzes began to notice various physical and behavioral problems with the herd. Through May 1996, the herd suffered from various health issues, poor production, and deaths. During 1992 to 1994, the cattle became thin, walked with stiff legs, and seemed sluggish.

¶ 4. The Gumzes consulted a professional herd nutritionist and veterinarian regarding the cattle's condition. The nutritionist suggested that nutrition was not the problem. He thought the problems were due to an outside factor that might be stray voltage. However, the Gumzes had the wiring checked previously by an electrician who found no problem. The cattle's condition worsened, and a veterinarian suggested testing for stray voltage.

¶ 5. Northern, the local electric utility, conducted tests in May 1996, and determined that "cow contact voltage" was below any "level of concern." The Gumzes hired an independent electrician, and he found electric current on the farm grounding system originating from Northern. An isolation transformer was installed, and the herd improved substantially.

¶ 6. The herd had some of the same problems recur from 1998 to 1999. Again, Northern found no problem with stray voltage. The Gumzes again hired an independent electrical tester who determined that the stray voltage was originating from Northern's distribution system.

¶ 7. The Gumzes commenced this action on December 21, 2001. They asserted claims for negligence, nuisance, strict liability, and trespass. They also claimed treble damages pursuant to WIS. STAT. § 196.64.[1] The complaint further alleged damage to the dairy herd, entitlement to nuisance damages for annoyance and inconvenience, and personal injury to James. The trial court dismissed the claims for strict liability, trespass, personal injury, and treble damages. The court later denied Northern's motion for summary judgment based upon the six-year statute of limitations under WIS. STAT. § 893.52.

¶ 8. The case proceeded to trial, and the jury found Northern causally negligent, that the Gumzes were not negligent, and that Northern maintained a nuisance. The jury awarded damages totaling $532,336. All post-trial motions were denied.

## Discussion

## I. Appeal

A. *Jury instruction regarding reasonable diligence and the statute of limitations*

¶ 9. Northern argues that the trial court erred by failing to submit a special verdict question and jury

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

instruction on the issue of whether the Gumzes acted with reasonable diligence. Northern asserts that, as a matter of law, the Gumzes failed to exercise reasonable diligence and, thus, their claims are barred by the six-year statute of limitations. A trial court has wide discretion in framing the special verdict. We shall not reverse unless the question does not fairly represent the material issue of fact to the jury. *Runjo v. St. Paul Fire & Marine Ins. Co.*, 197 Wis. 2d 594, 602–03, 541 N.W.2d 173 (Ct. App. 1995). The answer to a jury question cannot be altered unless no credible evidence exists to support it. Wis. Stat. § 805.14(1).

¶ 10. In *Allen v. PSC*, 2005 WI App 40, ¶ 8, 279 Wis. 2d 488, 694 N.W.2d 420, we summarized the applicable law regarding a trial court's refusal to submit a statute of limitations question to the jury in a stray voltage case:

> Wisconsin Stat. § 893.52 provides a six-year limitations period for negligence and nuisance claims. The accrual of a stray voltage claim is governed by the discovery rule. Under that rule, a plaintiff's claim accrues when the plaintiff objectively knows, or with reasonable exercise of care should have known, the cause of the injury and the defendant's part in that cause. Furthermore, "[a] plaintiff can rely on the discovery rule only if he or she has exercised reasonable diligence." Reasonable diligence means "such diligence as the great majority of persons would use in the same or similar circumstances" to discover the cause of the injury. "The construction of a statute of limitations is a question of law which we review without deference to the circuit court's decision." (Citations and footnote omitted).

¶ 11. In *Allen*, a dairy farmer sued an electric utility, alleging the utility negligently allowed stray voltage to injure his cattle and that the utility's distri-

bution system was a nuisance. *Allen*, 279 Wis. 2d 488, ¶ 1. We affirmed the conclusion of the trial court that the farmer took reasonable steps to determine the cause of the damages. *Id.* We also affirmed that the farmer did not have objective knowledge of the cause of the injury, until after an isolator device was installed, and the cattle's health improved. *Id.*, ¶ 14.

¶ 12. Here, like in *Allen*, the trial court declined to provide a statute of limitations instruction. We noted the jury instruction and special verdict addressed the farmer's negligence, even if we had not concluded that the farmer exercised reasonable diligence as a matter of law. The jury was instructed:

> The failure to exercise ordinary care to discover an unsafe electrical condition on the farm, even if it does not involve his own equipment, can also be negligence. However, if the defective electrical condition on the farmer's equipment or facilities is such that it was not known or would not have been [dis]covered by the exercise of ordinary care, the farmer is not negligent in permitting it to exist in such condition.

*Id.*, ¶ 17. The special verdict question asked the following: "Was [the farmer], his agents or employees negligent in the use of electricity on his farm?" The jury answered "No." *Id.* We noted, "In order to reach that conclusion, the jury had to determine that [the farmer] exercised ordinary care 'to discover an unsafe electrical condition on the farm,' such as stray voltage. Thus, the question [the utility] wanted the jury to consider was, in effect, answered, and the record supports the answer." *Id.*

¶ 13. Similar to *Allen*, even if we assume a special verdict question regarding diligence was required here, we conclude that Question 3 of the special verdict, when

considered with the jury instruction, effectively asked whether the Gumzes acted with reasonable diligence, so another question related to this issue was unnecessary. Question 3 of the special verdict and its answer were the following:

Question #3: Were Gumz[es] negligent in the use and/or discovery of electricity on their farm?

Answer: No

The jury instruction included a modified Wis JI—Civil 1052, which discussed the Gumzes' duty to exercise diligence. Because Question 3 addressed the diligence issue, the trial court did not err when it refused to submit the statute of limitations question to the jury.

## B. Comparative negligence instruction

¶ 14. Northern next argues that the trial court erred by limiting the comparative negligence question to the Gumzes' use or discovery of electricity. Specifically, Northern requested the special verdict include the question, "Were the Gumzes negligent in the operation, maintenance or management of the dairy operation?" The trial court refused this request. Thus, according to Northern, "the special verdict improperly denied the jury the opportunity to determine what role multiple factors, including herd management, not just electricity, played in their dairy operation."

¶ 15. The form or choice of language in a special verdict question is for the discretion of the trial court. *Bridgkort Racquet Club, Inc. v. University Bank*, 85 Wis. 2d 706, 712, 271 N.W.2d 165 (Ct. App. 1978). A verdict will not be disturbed because the court refused or failed to form the question in a certain way, as long

as the verdict exposes essential facts for a correct judgment. *Olk v. Marquardt*, 203 Wis. 479, 487, 234 N.W. 723 (1931). A trial court does not erroneously exercise its discretion if the special verdict questions cover all of the material factual issues. *Meurer v. ITT Gen'l Controls*, 90 Wis. 2d 438, 445–46, 280 N.W.2d 156 (1979).

¶ 16. We agree with the trial court that the special verdict gave Northern the opportunity to argue its theory that electricity did not cause the damage to the herd, and Northern could reinforce to the jury that the only thing that the Gumzes can recover are damages caused by the negligent service or facilities provided relative to electricity. Our holding is supported by *Allen*. In *Allen*, 279 Wis. 2d 488, ¶ 17, the comparative negligence question stated:

> Was [the farmer], his agents or employees negligent in the use of electricity on his farm?

> The jury answered "No."

Although Northern argues there are factual distinctions between this case and *Allen*, our analysis affirming the jury's answer to substantially the same comparative negligence question remains applicable.

¶ 17. In *Schmidt v. Shabow*, 265 Wis. 154, 60 N.W.2d 735 (1953), the supreme court explained the distinction between contributory negligence and mitigation of damages. Schmidt took her vehicle to a service station for an oil change. *Id.* at 155. Two days later her vehicle began producing an odd noise from under the hood while she was driving. *Id.* at 155–56. She attributed the noise to the vehicle's heater, which had produced a similar noise in the past. *Id.* at 156. She drove

an additional four miles to a different service station where she was informed that the crank case contained very little oil, and, as a result, her motor was damaged beyond repair. *Id.* Schmidt's contributory negligence was submitted to the jury, and she was found 75% negligent for driving her car after she heard the noises. *Id.*

¶ 18. The supreme court stated Schmidt's conduct "was not one which called for the application of the doctrine of contributory negligence." The court concluded:

> Nothing which she did at the service station can be construed as a factor contributing to the damage caused by defendant's failure. The loss to plaintiff would have resulted regardless of her conduct there. If the plaintiff is to be charged with any failure of duty it must be upon the theory that she failed after she heard the noise to so act as to mitigate the damages resulting from the defendant's omission. Her contribution to the result, if there is any contribution, was occasioned by her continuing to drive the car after she discovered the noise. Her conduct, thereafter, was such as to present an issue as to whether it added to the loss which resulted from the defendant's conduct. In other words, the issue of her negligence was not in the case. If she is to be charged with any breach of duty it must be determined to what extent, if any, she contributed to the loss, and whether she failed in her duty after she heard the noise to mitigate the damages. The most that can be said of plaintiff is that by her omission or failure she enhanced the damages.

*Id.* at 159.

¶ 19. Here, the Gumzes' actions with respect to their management of the herd or their dairy operations had no bearing on the damage caused by stray voltage. Any loss they sustained as a result of the stray voltage

611

would have resulted regardless of the Gumzes' management. Once the Gumzes demonstrated that Northern's stray voltage was a substantial cause of their injuries, Northern had the ability to argue the Gumzes' damages were not all caused by stray electricity. *See Maskrey v. Volkswagenwerk Aktiengesellschaft,* 125 Wis. 2d 145, 158–59, 370 N.W.2d 815 (Ct. App. 1985).

¶ 20. We conclude the trial court properly formulated the verdict to consider comparative negligence. Examining the record, the trial court appropriately crafted the verdict form to inquire regarding damages caused by electrical exposure while still providing Northern the ability to argue that other causes damaged the Gumzes or that the Gumzes failed to properly mitigate. The trial court further gave instructions on the causation of damages attributable to harmful levels of electricity and mitigation of damages.

*C. Nuisance and annoyance claims*

¶ 21. Northern next asserts the Gumzes' nuisance claim is barred by the three-year statute of limitations for personal injuries. Although the Gumzes argue the issue was waived, we choose to address the issue on the merits. *See Wirth v. Ehly,* 93 Wis. 2d 433, 444, 287 N.W.2d 140 (1980).

¶ 22. Northern contends that the nuisance claims for annoyance and inconvenience are personal injury claims. We disagree. In *Krueger v. Mitchell,* 112 Wis. 2d 88, 105–06, 332 N.W.2d 733 (1983), the supreme court held the following:

> The final issue on review is whether a plaintiff should be permitted to recover damages for personal

inconvenience, annoyance and discomfort caused by the existence of a nuisance even in the absence of any showing of monetary loss or bodily injury or illness. The Mitchells contend that because the plaintiff did not suffer actual bodily injury or property damages as a result of the aircraft noise, he has not suffered compensable damages. We disagree.

We believe that such damages are separately and independently recoverable in a nuisance action based on the very essence of the tort of nuisance. The tort of nuisance gives legal protection to a person's interest in the unimpaired use and enjoyment of land. This protection extends not only to the preservation of the property itself but also to its enjoyable use.

¶ 23. Further, annoyance and inconvenience do not encompass emotional distress, as Northern contends. RESTATEMENT (SECOND) OF TORTS § 821D, cmt. b (1977), instructs in part as follows:

"Interest in and use and enjoyment" also comprehends the pleasure, comfort and enjoyment that a person normally derives from the occupancy of land. Freedom from discomfort and annoyance while using land is often as important to a person as freedom from physical interruption with his use or freedom from detrimental change in the physical condition of the land itself. This interest in freedom from annoyance and discomfort in the use of land is to be distinguished from the interest in freedom from emotional distress.

¶ 24. Moreover, in *Vogel v. Grant-Lafayette Elec. Coop.*, 201 Wis. 2d 416, 427, 548 N.W.2d 829 (1996), the supreme court, in setting forth that nuisance claims resulting in annoyance and inconvenience damages were available in stray voltage litigation, concluded "nuisance law is applicable to stray voltage claims because excessive levels of stray voltage may invade a

613

person's private use and enjoyment of land." Again, turning to *Allen*, 279 Wis. 2d 488, ¶ 8, we note "WISCONSIN STAT. § 893.52 provides a six-year limitations period for negligence and nuisance claims."

¶ 25. James Gumz did suffer from depression and alleged a personal injury claim as part of the original complaint in this case, but that claim was dismissed before trial, based on the three-year statute of limitations. The jury ultimately did not hear evidence regarding James's depression and resulting medical treatment. However, the jury did hear evidence regarding the time and effort he put into attending to his dairy heard over the years due to the stray voltage, which is part of the compensable annoyance and inconvenience. Therefore, the Gumzes' nuisance claim was not barred by the statute of limitations for personal injuries.

*D. Limitation of time period for damages*

¶ 26. Finally, Northern argues the Gumzes' damages should be limited to the period after May 1996, when Northern first received notice of the Gumzes' concerns regarding stray voltage. Northern relies on *Snyder v. Oakdale Coop. Elec. Ass'n*, 269 Wis. 531, 69 N.W.2d 563 (1955), a supreme court case that did not involve stray voltage. Again, the Gumzes argue this issue was waived, but we choose to address it. *See Wirth*, 93 Wis. 2d at 444.

¶ 27. We agree with the trial court that the damages should not be limited in the manner Northern asserts. Our holding is supported by our decision in *Vogel*, where the appellants argued that "upon equitable principles or as a matter of law" we should limit the period of damages in a stray voltage case. *Vogel v.*

*Grant-Lafayette Elec. Coop.*, 195 Wis. 2d 198, 213, 536 N.W.2d 140 (Ct. App. 1995), *rev'd on other grounds,* 201 Wis. 2d 416, 548 N.W.2d 829 (1996). We expressly rejected the appellant's request that we adopt a rule limiting the time period in a stray voltage case. *Id.* at 214. Thus, Northern's assertion is not supported by Wisconsin law.

## II. Cross-Appeal

¶ 28. The Gumzes argue that the trial court improperly granted Northern's summary judgment motion on the issue of treble damages, pursuant to Wis. Stat. § 196.64, because Northern's summary judgment motion failed to reference affidavits or other evidentiary matters submitted in support of Northern's motion relating to the treble damages issue.

¶ 29. We review summary judgment without deference, using the same methodology as the trial court. *Green Springs Farm v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08. Our summary judgment methodology is well-known. First, we must determine whether the pleadings set forth a claim for relief. *Baumeister v. Automated Prods., Inc.,* 2004 WI 148, ¶ 12, 277 Wis. 2d 21, 690 N.W.2d 1. After it has been determined a claim has been stated, we must examine the moving party's affidavits and other proof to determine whether a prima facie case for summary judgment has been established. *Id.* Next, if a moving party establishes a prima facie case, the opposing party must then establish that there are disputed material facts, or undisputed material

facts from which reasonable alternative inferences could be drawn, which entitle the party to a trial. *Id.* Simply the existence of a factual dispute between the parties shall not defeat a proper summary judgment motion. *Id.*, ¶ 11.

¶ 30. We have previously recognized that in certain circumstances "a party moving for summary judgment can only demonstrate that there are no facts of record that support an element on which the opposing party has the burden of proof, but cannot submit specific evidentiary material proving the negative." *Transp ortation Ins. Co. v. Hunzinger Const. Co.*, 179 Wis. 2d 281, 291, 507 N.W.2d 136 (Ct. App. 1993). Also, "once sufficient time for discovery has passed, it is the burden of the party asserting a claim on which it bears the burden of proof at trial 'to make a showing sufficient to establish the existence of an element essential to that party's case.' " *Id.* at 291–92 (citation omitted). Further, Wis. Stat. § 802.08(3) provides:

> When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party.

¶ 31. The Gumzes made their treble damages claim pursuant to Wis. Stat. § 196.64. Section 196.64 states the following:

> **(1)** If a director, officer, employee or agent of a public utility, in the course of the discharge of his or her duties, willfully, wantonly or recklessly does, causes or

616

permits to be done any matter, act or thing prohibited or declared to be unlawful under this chapter or ch. 197, or willfully, wantonly or recklessly fails to do any act, matter or thing required to be done under this chapter, the public utility shall be liable to the person injured thereby in treble the amount of damages sustained in consequence of the violation. No recovery as in this section provided shall affect a recovery by the state of the penalty prescribed for such violation.

**(2)** The burden of proof in an action under sub. (1) rests with the person injured to prove the case by clear and convincing evidence.

¶ 32. We conclude that the trial court properly granted summary judgment because the Gumzes failed to support their claim. Examining Northern's brief in support of their summary judgment motion, it properly supported its motion with "other proof." The brief set forth the requirements for a treble damages claim under Wis. Stat. § 196.64. Specifically, the utility must have violated a specific provision of Wis. Stat. chs. 196 and 197, and such violation must have been intentional, wanton or reckless. *See* Wis. Stat. § 196.64.

¶ 33. We agree with the trial court that the Gumzes have failed to provide any evidence of a willful, wanton or reckless act or omission that violates the applicable provisions of Wisconsin law. Also, the Gumzes failed to submit evidence in opposition to a Northern witness's affidavit which supports Northern's assertion that it was unaware that stray voltage ever had reached a harmful level. Although the Gumzes point out that simply a statement that a plaintiff lacks evidence may be insufficient to support a summary judgment motion, *see Leske v. Leske*, 197 Wis. 2d 92, 97, 539 N.W.2d 719 (Ct. App. 1995), considering the lack of

617

any evidence supporting the Gumzes' assertion that Northern acted willfully or recklessly, summary judgment was appropriate.

*By the Court.*—Judgments and orders affirmed. No costs to either party.