Bradley C. MUNGER and
Summit Lake Association, Plaintiffs-Appellants,

Estate of John M. GLEASON, Sr., Plaintiff,

v.

Richard W. SEEHAFER, Peter M. Vanderhei,
Richard L. Hilger and Patrick M. Curran,
Defendants-Respondents.

Court of Appeals

*No. 2014AP2594. Submitted on briefs January 21, 2016.
—Decided November 29, 2016*

2016 WI App 89

(Also reported in 890 N.W.2d 22.)

750

758

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Stephen D. Willett* of *Stephen D. Willett & Associates, S.C.*, Phillips.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Sara C. Mills* of *Crivello Carlson, S.C.*, Milwaukee and *Richard M. Olk* and *Jay Kronenwetter* of *Sommer, Olk & Payant, S.C.*, Antigo.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. HRUZ, J. Bradley Munger ("Munger") and the Summit Lake Association (the "Association") appeal from judgments and an order dismissing all of Munger

and the Association's claims against Richard Seehafer, Peter Vanderhei, Richard Hilger, and Patrick Curran (collectively, the "Respondents").[1] On appeal, Munger and the Association assert the circuit court erroneously dismissed their intentional trespass and declaratory judgment claims, as well as a claim denominated "Public Nuisance and Inadequate Enforcement." They also assert the circuit court erroneously granted the Respondents summary judgment as to Munger and the Association's remaining claim, injury to real property.

¶ 2. We conclude the circuit court properly granted the Respondents' motion to dismiss. We hold that WIS. STAT. § 893.57, which sets forth the limitations period for intentional torts, applies to a claim alleging intentional trespass.[2] The Respondents' alleged trespass occurred in 2007; between the date of the alleged trespass and the time this action was filed, the legislature extended § 893.57's limitations period from two to three years. This action was not filed until 2011. Accordingly, we conclude the intentional trespass claim was untimely filed regardless of whether the longer limitations period applies. We also agree with the circuit court that the public nuisance/inadequate enforcement and declaratory judgment claims each fail to state a claim against the Respondents.

---

[1] The complaint also identified John M. Gleason and Dorothy S. Gleason as plaintiffs. John is now deceased, and his estate was substituted as a party for both him and Dorothy during the circuit court proceedings, but it does not appeal. Where necessary, we refer to the Estate as "Gleason" in this opinion.

Judge Fred Kowalski entered all orders relevant to the merits of this appeal. Judge Thomas Grover entered an order relating to the availability of a transcript for this appeal.

[2] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

¶ 3. The circuit court also properly granted the Respondents' summary judgment motion. The court correctly concluded the Association lacks standing to bring a claim for injury to property, as neither the complaint nor the record plausibly suggests that the Association or its members, aside from Munger, have suffered any property damage as a result of the Respondents' conduct in 2007. As for the alleged damage to Munger's property, we conclude his claim is barred by the doctrine of issue preclusion as a result of his earlier efforts to obtain a Department of Natural Resources (DNR) permit to remediate the alleged damage. In those administrative proceedings, the DNR determined it was impossible to separate the damage allegedly caused by the Respondents from other natural and human activities that affected the relevant property. For these reasons, we affirm the circuit court in all respects.

## BACKGROUND

¶ 4. Summit Lake is located in Langlade County and is a feeder lake for a five-lake chain. Munger and Gleason own property on opposite sides of Summit Lake's outlet creek. The creek flows about 300 feet from Summit Lake to the Forest Road culvert, then continues about 3,000 feet to Greater Bass Lake and beyond. Sometime prior to September 1989, Munger placed riprap in the creek bed.[3] The DNR issued an after-the-fact permit for the riprap to Munger on September 9, 1989.

---

[3] "Riprap is a 'loose assemblage of broken stones erected in water or on soft ground as a foundation.' Riprap is used to protect shorelines from water or ice erosion." *Rock-Koshkonong Lake Dist. v. DNR*, 2013 WI 74, ¶ 42 n.18, 350 Wis. 2d 45, 833 N.W.2d 800 (quoting THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1556 (3d ed. 1992)).

¶ 5. On October 20, 2007, DNR conservation warden Timothy Otto received a complaint of illegal dredging at the Summit Lake outlet creek. Otto was informed that Vanderhei had trespassed on Munger's property to remove material from the outlet. Otto went to Vanderhei's Greater Bass Lake residence and interviewed him. Vanderhei admitted that he, Seehafer, Hilger, and Curran had removed material, including a log and grass clippings, from the outlet creek. Vanderhei stated this material was preventing water from draining from Summit Lake. Munger alleges that, following a DNR investigation, the four Respondents were each issued five citations for various violations of Wis. Stat. ch. 30, which regulates navigable waters. According to Munger, these citations were ultimately dismissed upon the Respondents' agreement to plead guilty or no contest to criminal trespass to land, contrary to Wis. Stat. § 943.13.[4]

¶ 6. In April 2009, the DNR received a report of illegal structures placed at the Summit Lake outlet creek. A DNR investigator determined the following month that Munger had placed riprap beyond that area allowed by the 1989 permit. Munger agreed to remove the unauthorized fill, but he failed to timely do so. The gravel fill remained as of June 10, 2009, and Munger was issued two citations for obstructing navigable waters, contrary to Wis. Stat. § 30.15(1)(d).[5]

_____

[4] Contrary to the complaint's allegations, the DNR subsequently noted that the Respondents had also been found guilty of obstruction of a navigable waterway following their entry of no-contest pleas on February 5, 2008. No remediation order was included in the disposition of either the trespass or the obstruction charges.

[5] The citations incorrectly identify the statute as Wis. Stat. § 30.15(d).

Munger agreed to a finding of guilt as to one of the citations in exchange for dismissal of the other. The illegal fill was removed by late October 2009.

¶ 7. On March 8, 2010, Munger applied for a DNR permit seeking to place fill in the Summit Lake outlet creek in an effort to "repair damages" the Respondents caused in 2007. The Association supported the application. The DNR denied the permit, explaining that "[t]he various natural and human-made changes to the outlet over the years cannot be separated from one or the other with any certainty." Munger and the Respondents were not the only parties to have altered or affected the outlet creek and surrounding areas; the DNR concluded general public use of the waterway, as well as the Town of Upham's replacement of the Forest Road culvert, had impacted the area as well. Following significant public comment, the DNR concluded the proposed project "would materially obstruct navigation," adversely affect water quality, have an undesirable impact on wetlands and organism migration, and would create a de facto dam at the Summit Lake outlet.

¶ 8. Munger and the Association requested and were granted a contested case hearing before an administrative law judge (ALJ) from the State of Wisconsin Division of Hearings and Appeals. On April 25, 2011, the ALJ upheld the DNR's decision denying the permit, concluding that "most of the damage from the 2007 dredging and/or clearing has already naturally restored itself. A stable and re-vegetated low-flow channel has reestablished itself as a waterway connection between these lakes." The ALJ agreed with the DNR's findings that the proposed fill would obstruct navigation, impair wetland function, and "have a detrimental impact upon the fishery of both lakes." In all,

the ALJ found Munger and the Association "did not come close to carrying their burden of proof on the statutory standards for issuing this permit."

¶ 9. Shortly after the ALJ's decision was issued, Munger and the Association commenced this action against the Respondents and the State of Wisconsin.[6] The complaint included four counts: (1) intentional trespass to land (Count I); (2) physical injury to real property (Count II); (3) public nuisance and inadequate enforcement of WIS. STAT. ch. 30 as a result of the dismissal of the citations against the Respondents (Count III); and (4) declaratory judgment seeking an order declaring Munger's 1989 permit valid (Count IV).

¶ 10. Each of the Respondents raised the statute of limitations as an affirmative defense to the trespass claim, with Vanderhei and Hilger specifically raising the then-two-year statute of limitations governing intentional torts, WIS. STAT. § 893.57. In response to motions to dismiss on timeliness grounds, Munger and the Association argued that the statute of limitations applicable to all their claims was the six-year statute governing injury to real property, WIS. STAT. § 893.52. Alternatively, they argued that no statute of limitations barred their claims because they sought damages for a "continuing injury to real property."

¶ 11. Meanwhile, Munger and the Association were not content with the ALJ's decision upholding the DNR's denial of their remediation permit. As a result, and prior to filing this action against the Respondents, Munger and the Association had petitioned for judicial review of the agency decision. In the present action, in

_____

[6] The State was ultimately dismissed from the lawsuit. Munger does not appeal that determination.

addition to seeking dismissal of Count I, the Respondents also requested dismissal of Counts III and IV because the substance of those claims was identical to the issues being litigated in the judicial review action. The Respondents asserted the WIS. STAT. ch. 227 review process was the exclusive means for Munger and the Association to obtain review of the DNR decision denying Munger's permit application. The circuit court ultimately affirmed the ALJ's decision in the judicial review action, observing that "more than one human intervention" had affected water flow at the outlet creek and rejecting the notion that Munger and the Association were entitled to a permit to restore the creek to the condition in which it existed prior to the 2007 trespass.

¶ 12. In the present action, the circuit court granted the Respondents' motion to dismiss Counts I, III and IV. As to Count I, intentional trespass, the circuit court concluded the claim was barred by the statute of limitations for intentional torts contained in WIS. STAT. § 893.57, as more than three years had elapsed between the date of the alleged offense and the date Munger and the Association commenced their action. With respect to Counts III and IV, the court concluded the "primary focus of the pleadings . . . [is] the conduct of the DNR[,]" and, as such, those matters were best addressed in the WIS. STAT. ch. 227 action for judicial review.

¶ 13. Munger and the Association filed a motion for reconsideration. In relevant part, they argued the statute of limitations pertaining to their trespass claim was the six-year statute for injury to property, WIS. STAT. § 893.52, not the shorter statute of limitations for intentional torts. Alternatively, they asserted that the "continuing nature of the harm" to their property

precluded any statute of limitations from applying to bar their trespass claim. The circuit court rejected these arguments and denied the motion, reasoning that the trespass claim was distinct from the Count II injury to real property claim, the latter of which had not been dismissed as to the Respondents and could still be litigated. Thereafter, the court entered an order dismissing Counts I, III and IV against the Respondents.

¶ 14. In May 2014, the Respondents filed a motion for summary judgment on the surviving claim for injury to real property. The motion asserted summary judgment was appropriate against Munger and the Association for different reasons as to each plaintiff. First, the Respondents asserted that because Count II alleged damage only to Munger's property, the Association lacked standing to bring the claim. Second, the Respondents asserted that Munger's claim for property damage was barred by the doctrine of issue preclusion, because the "facts that give rise to the instant case have already been thoroughly developed and litigated before the DNR, the Division of Hearings and Appeals, and in Langlade County Circuit Court." The Respondents noted the DNR had conclusively determined any damage to the creek had been restored naturally and that it was impossible to separate the damage the Respondents caused in 2007 from the various other natural and human events that had occurred in the outlet creek over the years.

¶ 15. The circuit court granted the Respondents' summary judgment motion. After reviewing the complaint, the court concluded the allegations did not allege an injury to the Association's property, nor did the complaint identify any way in which any of the Association's members had been damaged, including

by diminished property values. The court therefore concluded the Association lacked standing to prosecute Count II. The court also agreed with the Respondents that Munger had actually litigated the issue of his alleged property damage to a conclusion in the DNR proceedings, with the DNR finding that it was impossible to determine what damage was attributable to the Respondents' conduct. The court applied issue preclusion to bar Munger's injury to real property claim because any finding that the Respondents caused damage to Munger's property in 2007 would be contrary to the agency's findings.

## DISCUSSION

¶ 16. On appeal, the only issues Munger and the Association raise relate to the viability of their claims against the Respondents. As set forth above, the circuit court granted the Respondents' motion to dismiss as to Counts I, III and IV, and their summary judgment motion as to Count II. We address each motion separately, and in each instance conclude the claims against the Respondents were properly dismissed.

### I. Motion to Dismiss

■■■■

¶ 17. "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶ 19, 356 Wis. 2d 665, 849 N.W.2d 693 (quoting *John Doe 1 v. Archdiocese of Milwaukee*, 2007 WI 95, ¶ 12, 303 Wis. 2d 34, 734 N.W.2d 827). In reviewing a motion to dismiss, we accept as true all well-pleaded facts in the complaint and any reasonable inferences there-

from. *Id.* We do not, however, add facts in the process of construing a complaint, and legal conclusions stated in the complaint need not be accepted as true. *Id.* Indeed, such legal conclusions are insufficient, standing alone, to allow a complaint to withstand a motion to dismiss. *Id.* "Plaintiffs must allege facts that, if true, plausibly suggest a violation of applicable law." *Id.*, ¶ 21.

### A. Count I (Intentional Trespass)

¶ 18. The circuit court dismissed Munger and the Association's intentional trespass claim as untimely. Munger and the Association argue the circuit court applied the wrong statute of limitations; in their view, it should have applied Wis. Stat. § 893.52, relating to injuries to real or personal property, rather than Wis. Stat. § 893.57, relating to intentional torts. "Determining which statute of limitations applies to an action is a question of law [that] we review de novo." *Estate of Hegarty ex rel. Hegarty v. Beauchaine*, 2001 WI App 300, ¶ 14, 249 Wis. 2d 142, 638 N.W.2d 355 (some formatting altered). Determining the meaning of a statute is a question of law, which we also review de novo. *Ritt v. Dental Care Assocs.*, 199 Wis. 2d 48, 60, 543 N.W.2d 852 (Ct. App. 1995). Similarly, when the facts are undisputed, whether the applicable statute of limitations has run on a claim is a question of law. *See Laughland v. Beckett*, 2015 WI App 70, ¶ 15, 365 Wis. 2d 148, 870 N.W.2d 466.

¶ 19. No published Wisconsin case appears to have considered whether allegations of intentional trespass are governed by Wis. Stat. §§ 893.52 or 893.57.

Typically, when two limitations periods, considered independently, could be applied to a cause of action, the more specific statute controls. *See Estate of Hegarty*, 249 Wis. 2d 142, ¶ 17. Accordingly, our task is to determine whether both statutes could apply to Munger's intentional trespass claim. If they could, we must determine whether one statute is more "specific" than the other and, if so, apply that statute.

¶ 20. Both WIS. STAT. §§ 893.52 and 893.57 are found in the subchapter relating to limitations periods for tort actions. Section 893.52 is entitled, "Action for damages for injury to property."[7] It provides that "an action, not arising on contract, to recover damages for an injury to real or personal property shall be commenced within 6 years after the cause of action accrues or be barred."[8] Subsec. 893.52(1) . Section 893.52 encompasses "negligence and nuisance claims." *Allen v. Wisconsin Pub. Serv. Corp.*, 2005 WI App 40, ¶ 8, 279 Wis. 2d 488, 694 N.W.2d 420; *see also Gumz v. Northern States Power Co.*, 2007 WI 135, ¶ 25, 305 Wis. 2d 263, 742 N.W.2d 271. Section 893.57 is the statute of limitations governing intentional torts. It provides: "An action to recover damages for libel, slander, assault, battery, invasion of privacy, false imprisonment or other intentional tort to the person shall be commenced within 3 years after the cause of

[7] Although a statute's title is not a part of the law, it may nonetheless aid us in resolving statutory interpretation questions. *State v. Matasek*, 2014 WI 27, ¶ 37 n.22, 353 Wis. 2d 601, 846 N.W.2d 811.

[8] This general period is shortened for actions seeking damages resulting from an accident involving a motor vehicle, or "in any other case where a different period is expressly prescribed." *See* WIS. STAT. § 893.52(1), (2).

action accrues or be barred." *Id.* Under both §§ 893.52 and 893.57, a cause of action accrues when the plaintiff discovers, or with reasonable diligence should have discovered, the injury and that the defendant's conduct probably caused that injury. *See Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶ 27, 305 Wis. 2d 538, 742 N.W.2d 294 (applying the discovery rule to actions governed by § 893.52); *Spitler v. Dean*, 148 Wis. 2d 630, 636, 436 N.W.2d 308 (1989) (applying discovery rule to intentional tort cases).

¶ 21. Our supreme court has previously addressed the choice between these two statutes of limitation as they pertain to a claim for a breach of fiduciary duty. In *Zastrow v. Journal Communications, Inc.*, 2006 WI 72, 291 Wis. 2d 426, 718 N.W.2d 51, certain employees filed suit against a stock trust's trustees. *Id.*, ¶¶ 2–3, 6. The trustees asserted Wis. Stat. § 893.57 barred the employees' action, but the circuit court concluded the employees' claim sounded in negligence and applied Wis. Stat. § 893.52's six-year limitations period. *Zastrow*, 291 Wis. 2d 426, ¶ 8. Upon "examining the nature of a fiduciary duty," the supreme court agreed with the trustees that the breach of a fiduciary duty of loyalty is necessarily an intentional tort to which § 893.57's limitations period applies. *Zastrow*, 291 Wis. 2d 426, ¶¶ 24–40. Consistent with the analysis in *Zastrow*, we examine the nature of a trespass to determine which statute of limitations should apply.

¶ 22. "[A] private landowner's right to exclude others from his or her land is 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.' " *Jacque v. Steenberg Homes, Inc.*, 209 Wis. 2d 605, 617, 563 N.W.2d 154

(1997) (quoting *Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994)). Notably, "[o]ne is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally . . . enters land in the possession of the other, or causes a thing or a third person to do so . . . ." *Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI 93, ¶ 40, 328 Wis. 2d 436, 787 N.W.2d 6 (quoting *Prahl v. Brosamle*, 98 Wis. 2d 130, 146, 295 N.W.2d 768 (Ct. App. 1980), *abrogated on other grounds by Wilson v. Layne*, 526 U.S. 603, 616 (1999)) (alteration in *Grygiel*).

¶ 23. *Prahl*'s statement regarding a potential absence of harm caused by trespass is slightly imprecise, in that the law presumes a trespass *always* harms the possessor's legally protected interest. *Jacque* was quite clear on this point:

> Because a legal right is involved, the law recognizes that actual harm occurs in every trespass. The action for intentional trespass to land is directed at vindication of the legal right. W. Page Keeton, *Prosser and Keeton on Torts,* § 13 (5th ed. 1984). The law infers some damage from every direct entry upon the land of another. *Id.* The law recognizes actual harm in every trespass to land whether or not compensatory damages are awarded. *Id.* Thus, in the case of intentional trespass to land, the nominal damage award represents the recognition that, although immeasurable in mere dollars, actual harm has occurred.

*Jacque*, 209 Wis. 2d at 619. Compensatory damages are not an essential element of the tort of trespass. 4 J.D. LEE & BARRY A. LINDAHL, MODERN TORT LAW § 38:7, at 38–21 (2d ed. 2006).

¶ 24. Thus, in an instance of trespass, the intrusion itself forms the basis for an award of damages, even absent any other injury. "A trespasser who has not damaged the property or its possessor is nevertheless liable to the possessor for nominal damages." *Prahl*, 98 Wis. 2d at 152 (citing *Hajec v. Novitzke*, 46 Wis. 2d 402, 417–18, 175 N.W.2d 193 (1970), and *Diana Shooting Club v. Kohl*, 156 Wis. 257, 145 N.W. 815 (1914)). In addition, "even where actual harm is slight," an award of punitive damages may be appropriate. *Jacque*, 209 Wis. 2d at 616–17. The justification for this rule is, again, the nature of the harm a trespass necessarily produces:

> [I]n certain situations of trespass, the actual harm is not in the damage done to the land, which may be minimal, but in the loss of the individual's right to exclude others from his or her property and . . . this right may be punished by a large damage award despite the lack of measurable harm.

*Id.* at 617. "[B]oth the individual and society have significant interests in deterring intentional trespass to land, regardless of the lack of measurable harm that results." *Id.*

■■■■■

¶ 25. This potential "lack of measureable harm" attendant to an intentional trespass compels us to conclude that the limitations period for intentional torts set forth in Wis. Stat. § 893.57 governs such a claim. The foregoing authorities establish that a cause of action for intentional trespass exists even in the absence of physical damage or injury to the property trespassed upon. The true "injury" produced by an intentional trespass is the violation of the possessor's

right to exclude others, even if there are, in some instances, other damages that flow from the trespass. A person may seek compensatory damages for such injuries as a remedy for trespass, but such damages are not essential to the cause of action. Importantly, the allegedly injured party may bring an independent claim for property damage occurring during the trespass, as Munger and the Association did here. Because the existence of damages for injury to real property is not necessary to maintain a claim for intentional trespass, WIS. STAT. § 893.52(1) cannot govern Munger's intentional trespass claim.

¶ 26. Munger and the Association counter that a claim for intentional trespass cannot be governed by WIS. STAT. § 893.57, either, because intentional trespass is not an intentional tort "to the person." Munger and the Association's argument on this point is undeveloped (it consists of only one sentence) and could be rejected for that reason. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). We also disagree on the merits.

¶ 27. To be sure, there is some superficial appeal to this argument, given that the "to the person" phrase must be given meaning, and it may seem to connote a personal injury that is physical in nature. However, the above analysis regarding the nature of an intentional trespass claim, as well as long-standing law, defeats Munger and the Association's argument in this regard. A tort "to the person" for purposes of WIS. STAT. § 893.57 "is '[a] tort involving or consisting in an injury to one's person, reputation, or feelings, as distinguished from an injury or damage to real or personal property.' " *Turner v. Sanoski*, 2010 WI App 92, ¶ 12, 327 Wis. 2d 503, 787 N.W.2d 429 (quoting BLACK'S LAW DICTIONARY 1527 (8th ed. 2004)) (alteration in *Turner*).

Again, the fact that an intentional trespass can occur even in the absence of tangible property damage is instructive. Intentional trespass is a personal tort: It is an offense against another's possession, including the person's right to exclude others from his or her real property, *see* LEE, *supra* ¶ 23, § 38:1, at 38–2, and the corresponding feeling of security the person may achieve in doing so.

■■■

¶ 28. Furthermore, that an intentional trespass does not necessarily entail physical or emotional damage to the person is irrelevant. Wisconsin courts have liberally construed the "personal" requirement in WIS. STAT. § 893.57. For example, in *Warmka v. Hartland Cicero Mutual Insurance Co.*, 136 Wis. 2d 31, 400 N.W.2d 923 (1987), the supreme court determined the statute of limitations governing intentional torts was applicable to actions against insurers alleging bad faith, which typically involve only pecuniary losses.[9] In *Turner*, this court concluded malicious prosecution claims are governed by § 893.57 because such torts "[concern] a person's 'right to be free of unjustifiable litigation.' " *Turner*, 327 Wis. 2d 503, ¶ 12 (quoting *Wisconsin Pub. Serv. Corp. v. Andrews*, 2009 WI App 30, ¶ 22, 316 Wis. 2d 734, 766 N.W.2d 232). And of course in *Zastrow*, the supreme court, while not specifically addressing § 893.57's "person" requirement,

---

[9] Damages for emotional distress may be available to an insured alleging bad faith in certain situations, but emotional distress is not required for an insured to maintain a bad faith claim. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 694–95, 271 N.W.2d 368 (1978) ("There need only be a showing of the knowledge or reckless disregard of the lack of a reasonable basis for denying or refusing to honor or negotiate on an insured's claim.").

held that a claim for breach of the fiduciary duty of loyalty—which does not require physical, emotional, or reputational injury—was subject to the limitations period for intentional torts. *Zastrow*, 291 Wis. 2d 426, ¶¶ 37–38, 43.

¶ 29. Accordingly, we conclude the statute of limitations governing intentional torts, WIS. STAT. § 893.57, is applicable to claims for intentional trespass. In so holding, we necessarily conclude that the limitations period contained in WIS. STAT. § 893.52 does not apply to a claim for intentional trespass, as such a claim need not entail "injury to real property" within the meaning of that statute. Because only § 893.57 applies, there are not two potentially applicable limitations periods and we have no need to address the final step in the *Estate of Hegarty* analysis—whether one statute of limitations is more "specific" than the other. *See Estate of Hegarty*, 249 Wis. 2d 142, ¶ 17.

¶ 30. Despite the blueprint set forth in *Estate of Hegarty* and *Zastrow* for resolving the statute of limitations issue presented by this case, none of the parties have addressed these authorities in their appellate briefing. Munger and the Association also have not discussed in any meaningful way the nature of a claim for intentional trespass, although the Respondents have done so in their response brief. Instead, Munger and the Association simply declare that the statute of limitations applicable to "all claims" in their complaint is WIS. STAT. § 893.52. They reason the six-year statute of limitations has been applied in cases similar to this one. We are not persuaded.

¶ 31. None of the authorities on which Munger and the Association rely are factually or legally similar to the present case. The first case they cite, *E-L Enterprises, Inc. v. Milwaukee Metropolitan Sewerage*

*District*, 2009 WI App 15, 316 Wis. 2d 280, 763 N.W.2d 231, was an inverse condemnation action involving allegations that the sewerage district damaged the plaintiff's building by draining groundwater during construction of a tunnel. *Id.*, ¶ 1. That case did not involve an intentional trespass claim, and the district apparently did not dispute that the six-year statute of limitations for damage to real property applied to the plaintiff's takings claim. *See id.*, ¶ 23. Rather, the only statute of limitations issue the court of appeals opinion in *E-L Enterprises* addressed was the district's argument that the circuit court had erroneously applied the discovery rule. *Id.* The supreme court accepted review and reversed the court of appeals' decision without addressing the statute of limitations. *See generally E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist.*, 2010 WI 58, 326 Wis. 2d 82, 785 N.W.2d 409 (holding that damage to plaintiff's property was not a compensable taking).

¶ 32. Munger and the Association also cite generally to *School District No. 15 of Town of Granville v. Kunz*, 249 Wis. 272, 24 N.W.2d 598 (1946), and *Velte v. United States*, 76 Wis. 278, 45 N.W. 119 (1890).[10] Again, as best we can tell, neither of these decisions involved an intentional trespass claim. In *Kunz*, the plaintiff school district sought damages for the cost of erecting a retaining wall to preserve its land from collapse following the defendant's excavation along the parties' property line. *Kunz*, 249 Wis. at 272. On appeal, the defendant asserted the school district's action was time-barred under a predecessor statute to

---

[10] Munger's citations to these authorities also lack pinpoint citations, contrary to the Rules of Appellate Procedure. *See* WIS. STAT. RULE 809.19(1)(e) (appellant's brief must contain argument containing "citations to the authorities . . . relied on as set forth in the Uniform System of Citation and SCR 80.02").

Wɪs. Sᴛᴀᴛ. § 893.52; we agreed with the circuit court that the date the excavation was completed was immaterial because the statute first began to run upon the school district suffering an injury. *Kunz*, 249 Wis. at 273. *Velte* was another takings case (this time involving the flooding of private land, and decided by a jury in favor of the private landowner), and it is not clear a statute of limitations issue was even presented. Rather, the government asserted the circuit court had erroneously allowed interest "not to exceed six years before the action was commenced"; in the government's view, the "taking" occurred "at the date of the appraisement by the commissioners." *Velte*, 76 Wis. at 283–84. *Velte* applied existing case law to hold that "[t]he time of the taking is the time when [the private lands] are first flowed permanently, and their value lessened or destroyed." *Id.* at 284.

¶ 33. Despite the fact a cause of action for trespass exists even absent property damage, Munger and the Association nonetheless alternatively argue their action was timely filed given the "continuing nature of the harm" to their property. Their reasoning, however, is difficult to follow. Munger and the Association note the Respondents were cited for several statutory violations, and they maintain these violations gave rise to a public nuisance subject to a private action for abatement under Wɪs. Sᴛᴀᴛ. § 30.294. In their view, "[t]he characterization by . . . § 30.294 of a violation of [Wɪs. Sᴛᴀᴛ. ch. 30] as a nuisance strongly supports an argument that the statute of limitations has not run to bar the Plaintiffs' causes of action." Munger and the Association then cite a number of cases (which we address in the pages that follow) for the proposition that "[a]n action for continuing injury to property is not barred by any statute of limitations."

¶ 34. In response, the Respondents argue that Munger and the Association's invocation of the law of nuisance is a diversion and an improper attempt to "blend" the complaint's claims in an effort to avoid the straightforward application of WIS. STAT. § 893.57 to Munger and the Association's intentional trespass claim. The Respondents further assert the alleged purpose of their intrusion—to allegedly create a nuisance—is irrelevant to whether a trespass had occurred, and, furthermore, it is the act or acts, not the harm or harms, that triggers the running of the statute of limitations.[11] We agree with the Respondents' arguments.

¶ 35. The primary authority on which Munger and the Association rely, *Speth v. City of Madison*, 248 Wis. 492, 22 N.W.2d 501 (1946), is of no aid to them. There, the City of Madison was alleged to have "wan-

---

[11] Although the Respondents cite libel cases in support of these observations, *see e.g., Laughland v. Beckett*, 2015 WI App 70, ¶¶ 15–18, 365 Wis. 2d 148, 870 N.W.2d 466, these principles are best articulated in LEE, *supra* ¶ 23, § 38:1, at 38–2 to 38–3 (describing elements of trespass claim, which do not take into account the purpose for the intrusion) and § 38:19, at 38–27 ("In classifying the trespass as permanent or continuing, the court should look to the act constituting the trespass, not the harm resulting from the act.").

Munger and the Association do not dispute these principles in their reply brief. Instead, they simply ignore the Respondents' argument and continue to assert that Count I, "liberally construed[,] sufficiently pleads a claim for trespass *and a continuing nuisance.*" (Emphasis added.) In doing so, they again specifically refer to the Respondents' alleged goal of creating a public nuisance. To be clear: even if the Respondents did trespass for the purpose of creating a nuisance, this fact, standing alone, does not transform the single incident of trespass into a "continuing" trespass for purposes of the statute of limitations.

tonly, willfully, and negligently" issued permits to re-move the bodies of two individuals from numbered crypts and directed the superintendent of the cemetery to relocate the bodies to cemetery lots. *Id.* at 494–95. The alleged owner of the crypts brought a claim for fraud and also for reselling the crypts and depriving the plaintiff of their use. *Id.* at 495. On appeal, the City challenged the circuit court's denial of its motion to dismiss. *Id.* at 492.

¶ 36. In addressing whether the statute of limita-tions barred the plaintiff's fraud claim, the court noted that WIS. STAT. § 330.19(7) (1943), set forth a six-year limitations period, but the action had been commenced eight years after the alleged unlawful acts. *Speth*, 248 Wis. at 495–96. Nonetheless, even though the plaintiff failed to plead the fraud claim with specificity, the court undertook to analyze the complaint's allegations to determine whether "the plaintiff [was] entitled to some measure of judicial redress." *Id.* at 496–97. In doing so, the court remarked that if the "acts of the defendant had been committed by a third party who had no interest in the cemetery, they would constitute nothing more than a trespass, for which the party would be liable for damages." *Id.* at 497. However, the city *did* have an interest in the cemetery, so the court concluded "the first cause of action sets forth nothing more than a claim for damages for injury to property." *Id.* at 498. As such, the plaintiff's claim was untimely filed under what is now WIS. STAT. § 893.52. *Speth*, 248 Wis. at 498. The supreme court's disposition with respect to the plaintiff's first cause of action in *Speth* does nothing more than apply the well-established rule that the sufficiency of the facts alleged, not the legal theory identified, control whether a claim has been properly stated. *See Data Key Partners*, 356 Wis. 2d 665, ¶ 21.

¶ 37. The *Speth* court further concluded the statute of limitations had not run on the plaintiff's claim for the deprivation of use of the crypts, because "no statute . . . bars an action for a continuing injury to property." *Speth*, 248 Wis. at 499 (citing *Cedar Lake Hotel Co. v. Cedar Lake Hydraulic Co.*, 79 Wis. 297, 48 N.W. 371 (1891); *Ramsdale v. Foote*, 55 Wis. 557, 13 N.W. 557 (1882)). It is this statement on which Munger and the Association place particular emphasis. However, contrary to their argument, this statement does not suggest that the statute of limitations is tolled indefinitely with respect to the alleged trespass in our case. The allegation in *Speth* was that the City had resold the crypts; it follows that the second cause of action was not for trespass (which would have been brought against the subsequent purchaser, not the City). Because the City did have an interest in the cemetery, *Speth* was more akin to a nuisance case than a trespass case. *See id.* at 498; *see also Sunnyside Feed Co. v. City of Portage*, 222 Wis. 2d 461, 466, 588 N.W.2d 278 (Ct. App.1998) (citing *Speth* in the context of a nuisance claim).

¶ 38. As in their analysis of *Speth*, Munger and the Association conflate different legal theories of recovery in an attempt to cobble together an argument that their trespass claim was timely filed. Although related, nuisance and trespass are not identical, and neither a public nor private nuisance claim was pled in this case against the Respondents.[12] *See infra* ¶ 43

_____

[12] Another example of Munger and the Association conflating nuisance and trespass claims is their citation in their reply brief to *Gumz v. Northern States Power Co.*, 2007 WI 135, ¶ 27, 305 Wis. 2d 263, 742 N.W.2d 271. Munger and the Association assert paragraph 27 "noted that the six-year statute of limita-

(concluding Count III is a claim directed against the DNR, not the Respondents). "The distinction between nuisance and trespass is in the difference in the interest interfered with: in a nuisance action, it is the use and enjoyment of land, while the interest in a trespass action is the exclusive possession of land." LEE, *supra* ¶ 23, § 38:2, at 38–4. There are two types of nuisance claims, which differ regarding their impact on the statute of limitations. A suit concerning a permanent nuisance must be brought within the applicable statute of limitations. *Sunnyside Feed*, 222 Wis. 2d at 466. However, if the nuisance involves ongoing or repeated harm that can be discontinued or abated, the statute of limitations does not begin to run for as long as the harm continues. *Id.* On the other hand, "[a]n unprivileged remaining on another's land is a continuing trespass for so long as the defendant wrongfully remains." LEE, *supra* ¶ 23, § 38:7, at 38–10. In all, Munger and the Association's attempt to invoke nuisance principles to save their trespass claim fails.

¶ 39. The complaint in this case alleges the Respondents committed a single, isolated incident of trespass in 2007. The complaint asserts the Respondents intentionally entered Munger's property without consent. The allegations recite, in detail, the DNR's investigatory efforts to determine who entered Munger's land and what took place in the outlet creek.

tions applied to the plaintiffs' claims for property damage and trespass." To the contrary, paragraph 27 of the *Gumz* opinion simply defined the contours of the petitioner's argument in that case relating to the discovery rule; it certainly does not establish that the six-year statute of limitations for property damage claims applies to allegations of intentional trespass. In any event, as the supreme court identified in the first paragraph of its opinion, *Gumz* was a "private nuisance action based on negligence," not a trespass case. *See id.*, ¶ 1.

Munger and the Association themselves distinguished their trespass claim from their property damage claim, noting that the "actual damages" caused by the Respondents during the trespass were set forth in Count II.[13] The single incident of trespass allegedly occurred in 2007; it ended on the day the four trespassers left Munger's property, especially given there are no allegations that they left behind any personal property on Munger's property. There is no basis in this case to conclude the Respondents' intentional trespass "continued" in any sense.

¶ 40. Applying Wis. Stat. § 893.57 to the present case, we conclude Munger and the Association's claim for intentional trespass is time-barred. The Respondents' unpermitted entry onto Munger's land occurred sometime prior to October 23, 2007. In 2010, the legislature extended the limitations period for intentional torts under § 893.57 from two to three years. *See* 2009 Wis. Act 120, § 1. That change became effective for all injuries occurring on or after February 26, 2010. *See id.*, § 2. We need not determine which of the two- or three-year statute of limitations applies in this case, however. Munger and the Association filed the present action in July of 2011, meaning their claim for intentional trespass was untimely regardless of which version of § 893.57 applies.[14]

---

[13] Contrary to Munger and the Association's argument, the nature of the acts and harms to Munger's property and, ostensibly, to Summit Lake and its outlet creek *do* affect differently the statute of limitations for each of their claims. It is only to Count II, not the intentional trespass claim, that the allegations concerning Munger's "lost acreage" on his property and the "displacement" of water or other "materials" pertain.

[14] Munger and the Association do not argue the discovery rule has any application in this case, and we perceive no basis in the record to create a plausible issue regarding tolling.

## B. *Count III (Public Nuisance/Enforcement)*

¶ 41. Munger and the Association do not clearly challenge the circuit court's decision to dismiss Count III. It is clear, however, they disagree with this determination, as their briefing on the statute of limitations issue systematically conflates the allegations related to the trespass and public nuisance claims. Munger and the Association argue they have, "[a]t the very least, . . . alleged in [Count] III that the harm constitutes a public nuisance, the nature of which is continuing because the harm could be discontinued or abated by appropriate remedial action."

¶ 42. We typically do not abandon our neutrality to develop arguments for the parties. *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82. This rule has particular force "when an appellant ignores the ground upon which the trial court ruled and raises issues on appeal that do not undertake to refute the trial court's ruling." *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994). The circuit court deemed Count III "curious in that the primary focus of the pleadings in that count is with reference to the conduct of the DNR." Our assessment of the allegations comports with this conclusion.

¶ 43. While Count III is not clearly pled, it appears the primary thrust of those allegations was that the DNR erred by dismissing the Respondents' citations and by failing to order the Respondents to remediate the alleged damage to the outlet channel. The relief prayed for requested the circuit court to "grant injunctive relief ordering that the outlet of Summit

Lake be repaired to its natural condition existent in October of 2007, prior to the illegal and tortious acts of the Defendants." However, the parallel judicial review proceeding also involved whether the DNR properly refused to order remediation, in the sense that Munger and the Association sought to obtain a permit to restore the damages to the outlet creek allegedly caused by the Respondents. We agree with the circuit court that Count III fails to state a claim against the individual Respondents.

### C. Count IV (Declaratory Judgment)

¶ 44. For the foregoing reasons, *see supra* ¶¶ 42–43, we also conclude Count IV was properly dismissed against the Respondents. Munger and the Association fail to develop an argument that the circuit court erred, and they do not address the grounds on which the circuit court ultimately dismissed the declaratory judgment claim. *See supra* ¶ 42. Moreover, Count IV merely requested "an order declaring the 1989 permit valid, and to have a court-ordered certified surveyor mark the proper locations of the walls['] permitted length." Count IV fails to state a claim against the Respondents.

### II. Summary Judgment Motion

¶ 45. Munger and the Association argue the circuit court erroneously dismissed Count II on summary judgment. The Association challenges the circuit court's conclusion that it lacked standing to prosecute the property damage claim against the Respondents.

Munger challenges the circuit court's conclusion that issue preclusion bars him from relitigating his injury to real property claim.

■

¶ 46. We review a grant of summary judgment de novo. *Chapman v. B.C. Ziegler & Co.*, 2013 WI App 127, ¶ 2, 351 Wis. 2d 123, 839 N.W.2d 425. "A court must grant summary judgment to a party if 'there is no genuine issue as to any material fact' and that party 'is entitled to a judgment as a matter of law.' " *Id.* (quoting Wis. Stat. § 802.08(2)).

■

¶ 47. Analyzing a summary judgment motion requires a two-step process. *Id.* First, we focus on the complaint to determine whether it sets forth a proper claim for relief. *Id.* If so, and if the answer joins issue, the second step is to determine whether there are any genuine issues of disputed fact that are material to the complaint's claim. *Id.* A factual issue is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party, *Schmidt*, 305 Wis. 2d 538, ¶ 24 (citing *Baxter v. DNR*, 165 Wis. 2d 298, 312, 477 N.W.2d 648 (Ct. App. 1991)); "a 'material fact' is one that is 'of consequence to the merits of the litigation,' " *id.* (quoting *Michael R.B v. State*, 175 Wis. 2d 713, 724, 499 N.W.2d 641 (1993)). During this second step of the analysis, "we search the [r]ecord to see if the evidentiary material that the parties set out in support or in opposition to summary judgment supports reasonable inferences that require the grant or denial of summary judgment." *Chapman*, 351 Wis. 2d 123, ¶ 2. Any reasonable doubts regarding the existence of a genuine issue of material fact must be resolved against the moving party. *Schmidt*, 305 Wis. 2d 538, ¶ 24.

786

## A. Standing

¶ 48. "Standing" is a concept that restricts access to judicial remedies to those who have suffered some injury because of something that someone has either done or not done. *Krier v. Vilione*, 2009 WI 45, ¶ 20, 317 Wis. 2d 288, 766 N.W.2d 517. "The law of standing should be liberally construed, and as such, standing is satisfied when a party has a personal stake in the outcome." *Id.* (citing *City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 228–30, 332 N.W.2d 782 (1983)); *see also Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n*, 2011 WI 36, ¶ 40, 333 Wis. 2d 402, 797 N.W.2d 789. "Further, the plaintiffs must show that they suffered, or were threatened with, an injury to an interest that is legally protectable." *Krier*, 317 Wis. 2d 288, ¶ 20 (citing *Chenequa Land Conservancy, Inc. v. Village of Hartland*, 2004 WI App 144, ¶¶ 13–16, 275 Wis. 2d 533, 685 N.W.2d 573). As the Association observes, even a "trifling interest" may suffice. *McConkey v. Van Hollen*, 2010 WI 57, ¶ 15, 326 Wis. 2d 1, 783 N.W.2d 855 (quoting *Fox v. DHSS*, 112 Wis. 2d 514, 524, 334 N.W.2d 532 (1983)). Whether a party has standing to bring suit is a question of law that we review de novo. *Id.*, ¶ 12 (citing *Krier*, 317 Wis. 2d 288, ¶ 14).

¶ 49. The Association argues "Count II seeks redress and remedies resulting from the property damage inflicted by [the Respondents] on behalf of all Plaintiffs, not solely Mr. Munger."[15] The Association's appellate argument apparently relies on the notion that all of its

[15] In responding to this argument, the Respondents cite an unpublished court of appeals per curiam decision. This is improper, and we admonish counsel that future violations of

members suffered an injury due to lowered water levels on Summit Lake. An organization "has standing to sue in its own name if it alleges facts sufficient to show that a member of the organization would have had standing to bring the action in his own name." *Wisconsin's Envtl. Decade, Inc. v. Public Serv. Comm'n*, 69 Wis. 2d 1, 20, 230 N.W.2d 243 (1975); *see also Metropolitan Builders Ass'n of Greater Milwaukee v. Village of Germantown*, 2005 WI App 103, ¶¶ 13–14, 282 Wis. 2d 458, 698 N.W.2d 301. We initially focus on the complaint, to ascertain whether there are any allegations related to Association members that would support the Association's standing argument. We then consider the Association's argument that we are required to engage in an independent review of the entire record—not just the summary judgment materials—to ascertain whether it has standing. We ultimately conclude that neither the complaint nor the record support the Association's claimed standing.

¶ 50. We begin with the complaint. The Association first directs us to paragraph 45, which states only that the "Plaintiffs seek to redress past injury by claiming damages, thus entitling Plaintiffs to a jury; restrain further injury by requesting that the court enjoin Defendants from entering the area of the outlet creek, and abate the source of the injury through injunctive relief set forth in Claim III below." This vague allegation is silent as to *what* injury the Association allegedly suffered. Paragraph 45, standing alone, does not allege facts, but is merely a legal conclusion dressed up as a prayer for relief. *See Data Key Partners*, 356 Wis. 2d 665, ¶ 21.

the Rules of Appellate Procedure may result in sanctions. *See* Wis. Stat. Rules 809.23(3)(a); 809.83(2).

¶ 51. The Association next directs us to paragraph 38 of the complaint. That paragraph states:

> Defendants dredged the outlet stream of Summit Lake and re-directed the course of water flow 6 feet unto [sic] the property of Bradley Munger. The dredged channel was measured by the DNR Water Management Specialist, Gary Bartz, to be 41 feet long, with an average width of two feet and an average depth of one foot. A copy of the report from Mr. Bartz to the DNR Warden, Timothy Otto, is attached hereto for reference and marked Exhibit D.[16]

Nothing in these allegations speaks of property damage to the Association. Nor does the report—which recommends only that the DNR "seek restoration of the area to reduce erosion, prevent the loss of water out of Summit Lake, and to have all obstructions and deposits removed from the wetlands and bed of the waterway"—assert anywhere that there has been any actual property damage to the Association as a result of the Respondents' activities.

¶ 52. The remainder of Count II is also devoid of any allegation of injury to any person other than

---

[16] During oral argument before the circuit court, Munger and the Association directed the court to the complaint's Exhibit D, the report from water management specialist Gary Bartz. Munger and the Association claimed Bartz opined that the Respondents' dredging lowered the ordinary high water mark on Summit Lake. In fact, Bartz stated, "The reason why the water was not flowing out of Summit Lake [in 2007] was because the water levels have been too low. . . . Complaints on low water levels for most of the lakes in this area have increased this year due to the drought." In any event, regardless of the argument presented to the circuit court, the complaint fails to allege sufficient facts regarding the impact of the Respondents' activities on Summit Lake's water levels or on other riparian owners more generally.

Munger. There are no allegations in Count II averring the Association seeks damages related to lowered water levels on Summit Lake, even under a liberal standard of pleading. Count II does not even allege that lowered water levels actually resulted from the Respondents' conduct. Instead, the pertinent allegations in Count II all relate to physical damage to Munger's property. Count II alleges the "majority of the 41[-]foot long unpermitted dredging was done on Bradley Munger's property."[17] According to the complaint, this dredging displaced soil and disrupted vegetation on Munger's property. The Respondents also allegedly "displaced a substantial section of Bradley Munger's permitted rip rap wall" and eroded his shoreline due to the widening of the channel. Finally, Count II alleges that "[i]n re-directing the water course six feet further onto Mr. Munger's property, the Defendants have distorted the property line and ultimately deprived Mr. Munger of a portion of his overall acreage and six feet of shoreline."

¶ 53. We conclude that, in this case, the Association's failure to allege any injury in fact, independent of those allegedly suffered by Munger, is fatal to its property damage claim. The *Wisconsin's Environmental Decade* and *Metropolitan Builders Association* cases recognized that Wisconsin's standing formula is built in substantial part upon the foundation laid by the federal courts. *See Wisconsin's Envtl. Decade*, 69 Wis. 2d at 11; *Metropolitan Builders Ass'n*, 282 Wis. 2d 458, ¶ 14 n.3. An organizational plaintiff may have standing to bring suit on either its own behalf ("organizational standing") or on the behalf of one or more of its members ("associational standing"). *See Warth v.*

---

[17] The complaint does not identify where the remainder of the dredging occurred.

*Seldin*, 422 U.S. 490, 511 (1975); *PETA v. USDA*, 797 F.3d 1087, 1093 (D.C. Cir. 2015). In this case, the Association's argument is not that it has suffered any injury to its own interests; its claims are purely derivative of those of its members.

¶ 54. Associational standing—the kind of standing referred to in the *Wisconsin's Environmental Decade* case on which the Association relies—does not simply depend on a member of the Association having a cognizable claim. Rather, in addition to the requirement that the Association demonstrate that at least one of its members would have had standing, the Association must also show that "the interests at stake in the litigation are germane to the organization's purpose . . . and . . . neither the claim asserted nor the relief requested requires an individual member's participation in the lawsuit." *Sierra Club v. EPA*, 774 F.3d 383, 388 (7th Cir. 2014). Here, the Association asserts it is attempting to vindicate the rights of all riparian property owners on Summit Lake, but, in reality, Count II's allegations only go to damage sustained on Munger's individual parcel. *See supra* ¶ 52. In this sense, Munger's participation in this lawsuit is essential; compensation for damages to his real property is all the relief for which the Association is fighting. Any recovery the Association receives would rightfully belong to Munger.

¶ 55. The Association also ignores the established summary judgment methodology in asserting that, to ascertain standing, we are required to engage in an independent review of the record, beyond the summary judgment materials. As authority, it cites *State ex rel. First National Bank of Wisconsin Rapids v. M & I Peoples Bank of Coloma*, 95 Wis. 2d 303, 290 N.W.2d 321 (1980). However, the standing issue there

was resolved following a trial; thus, it was only natural for the supreme court to examine the entire record, including testimony, as it ultimately determined the circuit court's finding that there had not been any injury was clearly erroneous. *See id.* at 307, 309. The other case the Association relies on, *Village of Slinger v. City of Hartford*, 2002 WI App 187, 256 Wis. 2d 859, 650 N.W.2d 81, was resolved upon a summary judgment motion, and the court was principally concerned with whether the complaint sufficiently alleged that the plaintiff had or would sustain some injury. *See id.*, ¶ 12. After analyzing the entire complaint, and observing that "the law requires at least an allegation of pecuniary loss or injury," the court added—apparently gratuitously—that there was "nothing in the record upon which to base an inference that the [plaintiff] would be adversely affected" by the challenged conduct. *Id.* The Association reads too much into *First National Bank* and *Village of Slinger*.

■■

¶ 56. In any event, the Association has not directed us to anything in the record that would alter our conclusion that the Association has failed to identify its interest in the property damage claim alleged in Count II. Rather, its argument consists of vague generalities —for example, its assertion that the "damage that was done to the lake as a whole had an effect on the Association members." We generally do not consider conclusory assertions in appellate briefs. *Associates Fin. Servs. Co. of Wis. v. Brown*, 2002 WI App 300, ¶ 4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56. To compound this infraction, such assertions in Munger and the Association's brief are unaccompanied by record citations. *See* WIS. STAT. RULE 809.19(1)(e).

¶ 57. Remarkably, the Association suggests its members suffered unspecified financial and "emotional damage" as a result of the Respondents' conduct. With respect to financial damage, the Association did not plead any facts identifying how the Respondents' conduct injured its members, nor does its assertion of financial damage in its appellate brief include a record citation. As for the purported "emotional damage," the Association certainly did not plead a claim for intentional infliction of emotional distress under *Alsteen v. Gehl*, 21 Wis. 2d 349, 124 N.W.2d 312 (1963). Rather, it cites only to deposition testimony in which an individual testified that "this whole thing since 2007 has disturbed the people on this lake so bad." However, an *Alsteen* claim requires the plaintiff to demonstrate both that the defendant's conduct was "extreme and outrageous" and that such conduct caused "an extreme disabling emotional response." *Id.* at 359–60. The record here does not come close to supporting either element.[18] We conclude the Association's purportedly claimed financial and emotional damages are insufficient to confer standing.

### B. Issue Preclusion

¶ 58. The circuit court determined Munger's claim for injury to real property was barred by the doctrine of issue preclusion. The court observed that

---

[18] To the extent the Association raises the issue of emotional distress not as an independent claim, but rather as a specific measure of damages, it has not demonstrated its members suffered the "substantial other damages" necessary to recover for emotional distress in an intentional tort action. *See Anderson*, 85 Wis. 2d at 694.

the issue before the DNR in the administrative proceedings was "whether to grant or deny the application for a permit to restore the property to the condition it was prior to the activities" of the Respondents. As such, the court remarked that the property damage the Respondents allegedly caused "was a central subject of the hearings." The court gave preclusive effect to the DNR's finding that Munger had failed to establish that the damages the Respondents caused could be separated from other natural or human acts. The court also noted the DNR's findings that the area had generally been restored to its natural condition and that the then-current state of the outlet creek served the public interest. Consequently, the court concluded Munger could not prevail on his property damage claim without contradicting the DNR's findings in the administrative proceedings: Munger would have to prove what damages were caused by the Respondents, whereas the DNR concluded that any attempt to assign responsibility for the various changes to the outlet creek would be futile.

■■■■

¶ 59. "Issue preclusion, formerly known as collateral estoppel, 'is designed to limit the relitigation of issues that have been actually litigated in a previous action.' " *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis. 2d 210, 219, 594 N.W.2d 370 (1999) (citation omitted) (quoting *Lindas v. Cady*, 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994)). Relitigation of previously decided issues is undesirable, as it wastes judicial resources and raises the specter of inconsistent decisions on identical issues. *Landess v. Schmidt*, 115 Wis. 2d 186, 198, 340 N.W.2d 213 (Ct. App. 1983). "The party asserting issue preclusion carries the burden to establish that it should be applied." *Paige K.B.*, 226 Wis. 2d at 219.

¶ 60. To determine whether issue preclusion bars a subsequent claim, circuit courts apply a two-step analysis. *Estate of Rille ex rel. Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶ 36, 300 Wis. 2d 1, 728 N.W.2d 693. First, the court must determine whether issue preclusion can, as a matter of law, be applied. *Id.* In this step, "a circuit court must determine whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment." *Id.*, ¶ 37. This presents a question of law that we review de novo. *Id.* Second, the circuit court must determine whether the application of issue preclusion comports with principles of fundamental fairness. *Id.*, ¶ 38. The decision whether to apply issue preclusion at this stage "rests on the circuit court's sense of justice and equity," *id.*, ¶ 63, and is therefore reviewed for an erroneous exercise of discretion, *id.*, ¶ 38. Our supreme court has articulated a list of five non-exclusive factors to be considered when deciding whether the application of issue preclusion comports with fundamental fairness. *Id.*, ¶¶ 38, 61–63.

¶ 61. Determinations by administrative agencies acting in a judicial capacity can be given preclusive effect in subsequent court actions. *Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 174 Wis. 2d 381, 398, 497 N.W.2d 756 (Ct. App. 1993). For issue preclusion to apply in such a scenario, the following criteria must be established: (1) the administrative proceeding must have been properly before the agency; (2) the agency must have been acting in a judicial capacity; (3) the issues for which preclusion is sought must have been actually determined by the administrative agency; and (4) the

795

parties must have had an adequate opportunity to litigate those issues before the agency. *Id.* at 399; *see also State v. Terry*, 2000 WI App 250, ¶ 13 n.5, 239 Wis. 2d 519, 620 N.W.2d 217.

¶ 62. The only one of these criteria Munger disputes is the third, arguing that "none of the issues of this case were decided in the DNR proceedings." We agree with Munger that the pertinent issues to be decided in this litigation as to Count II are whether the Respondents caused damage to his property and, if so, the amount of damages that will compensate him for such injury. Munger also correctly observes that the issue in the DNR proceedings was whether his permit application seeking to remediate the alleged property damage should be granted.

¶ 63. However, the mere fact that Munger had different objectives in initiating the DNR proceedings and this lawsuit is not dispositive. What matters is whether the relevant issue in this case was "actually determined" by the DNR in its proceedings. *See Hlavinka*, 174 Wis. 2d at 398. To that end, we disagree with Munger's assertion that the only dispositive agency finding was "that adding fill to the dredged channel would impede navigation."

¶ 64. Munger flatly placed the issue of the Respondents' damage to his property before the DNR; his application states he desired to "fill in . . . dredged areas" from 2007. (Capitalization and formatting altered.) Section 7(b) of the application requested information about the "purpose, need, and intended use of [the] project." Here, Munger wrote in, "repair damages by others." (Capitalization and formatting altered.) The DNR denied his application in a written denial order that included findings of fact listing the specific reasons for denial. The DNR expressed that Munger's

"stated purpose is to repair damages from dredging done by others in the fall of 2007." Thus, the scope of the DNR review was not as narrow as Munger suggests, and it clearly included a determination of whether there was a casual nexus between the Respondents' activities and any damage to the outlet creek.

¶ 65. More importantly, the DNR's finding of fact number ten states that "various natural and human-made changes to the outlet over the years cannot be separated from one or the other with any certainty." "Under normal circumstances[,] the action of waves and ice create a natural sandbar at the outlet [of Summit Lake] that is below the ordinary high water mark of the lake," enabling navigation and downstream drainage. Munger told the DNR "there was rock riprap across the entire outlet stream with a pipe carrying stream water through the embankment when he purchased the property." The DNR made extensive findings regarding the Respondents' conduct in 2007, citing photographs that "show several men with shovels digging a channel through an accumulation of sawed logs, grass clippings, leaves, rock riprap, sand and muck." The outlet creek was further altered by the Town of Upham's replacement of the Forest Road culvert, and the DNR noted Munger had himself illegally obstructed the creek in 2010 by placing rock and sand riprap that, in part, "covered the area dug through to the lake by the four men" in 2007.

¶ 66. The DNR clearly determined in 2011 it would be impossible—not just "difficult," as Munger contends—to identify what changes to the outlet creek were attributable to the 2007 activities of the Respondents. The DNR's finding of fact number ten explicitly deems it impossible to separate the "various natural

and human-made changes to the outlet over the years" and elaborates on the fatally problematic causation issues:

> For example, after any period of time when seasonal flows have occurred, natural movement of lake bed and stream bed material has occurred. Another example is that many people have walked the bed of this stream since the 2007 activities of the four men. The public, in exercising their right to access this waterway on foot as long as they keep their feet wet, has impacted the bank and bed contours where the fill is proposed. Several men walking in mucky sand will displace a significant amount of material in a small stream.

Munger did not challenge finding of fact number ten in his request for a contested case hearing, and, following the hearing, the ALJ upheld the DNR's decision to deny the permit. Munger does not argue now that he lacked an adequate opportunity to litigate this issue before the agency.

¶ 67. The passage of time does nothing to help Munger's argument. A preclusive administrative finding in 2011 that a causation determination could not be made due to the then-current natural state of the creek necessarily means such a determination could not be made at any later point in time. Moreover, Munger does not contend he can now show, at this late date, that he can recover on his property damage claim even if the DNR's factual finding was correct.

¶ 68. Munger also argues the DNR's determination regarding causation "was not essential to the DNR's judgment" and therefore does not bar his present claim for injury to property. However, the only property damage Munger points to in his appellate briefing is damage that was allegedly attributable to the Respon-

798

dents' activities in the outlet creek: namely, the "displacement of water from Summit Lake" and "lost acreage as a result of the [Respondents'] redirection of the channel onto his property." As both the DNR and the ALJ acknowledged, this was the same damage Munger sought to remedy in his DNR permit application. It seems plain, then, that the issue of what damage the Respondents actually caused was squarely before the DNR, in determining whether a permit should be granted to remedy such damage. The DNR concluded Munger could not tie the alleged outlet creek damage to the Respondents' activities.[19] Munger offers no response to this reasoning, other than to repeatedly claim the "language [regarding causation] was not essential to the DNR's judgment."

¶ 69. Instead, Munger presents something of a strawman argument by asserting the "DNR did not hold that the illegal digging did not harm Mr. Munger, let alone the Association, . . . Gleason, or the public in general." Munger is correct that the DNR never found

---

[19] Our conclusion in this respect is not altered by the ALJ's observation that much of the lengthy acrimonious history between Summit Lake property owners and downstream property owners was "held to be outside the scope of the present hearing, which relates solely to whether or not the applicant has met the statutory standards for issuing the permit for a structure or fill placed upon navigable waters." That is a true statement, insomuch as the ALJ was not tasked with adjudicating issues outside the scope of the permit application, like the proper remedy for the Respondents' 2007 trespass or for Munger's placement of unpermitted riprap. However, as we have indicated, Munger placed before the DNR the issue of damages (and thus causation) related to the Respondents' activities in the outlet creek. It was the entire premise of his application. As a result, determining what harm the Respondents actually caused was central to determining whether a permit could be granted consistent with the statutory criteria.

that the Respondents' conduct did not cause any property damage or that the property damage did not harm Munger. However, the DNR clearly found that, even assuming the Respondents damaged Munger's property, by April of 2011 any harm they caused was inseparable from other natural and human events that occurred in the outlet creek. This factual determination was essential to the DNR's decision, as it was a key factor in the DNR's consideration of whether the public interest was served by issuing Munger a permit. Munger's argument to the contrary in unavailing.

¶ 70. Next, Munger asserts that applying issue preclusion in this case is inconsistent with principles of fundamental fairness. This argument consists of a single paragraph in Munger's brief-in-chief, in which Munger does not apply, analyze, or even cite the five factors relevant to the fundamental fairness inquiry.[20] *See Estate of Rille*, 300 Wis. 2d 1, ¶ 61. Nonetheless, he claims that "[m]ost of the plaintiffs in this case were not parties in the DNR proceedings and it would be fundamentally unfair to deny them their remedy for property damage inflicted upon them."

¶ 71. This contention is a complete red herring. The plaintiffs that were not parties to the DNR proceeding are no longer involved in the present action. Gleason had not appealed, and, for the reasons provided above, the Association lacks standing to prosecute a claim for Munger's property damage. Munger also harkens back to the notion that he did not intend to

---

[20] Although Munger ultimately cites these factors in his reply brief, it is a well-established rule that an appellate court will not consider arguments made for the first time in a reply brief. *See Turner v. Sanoski*, 2010 WI App 92, ¶ 12 n.6, 327 Wis. 2d 503, 787 N.W.2d 429.

insert the issue of property damage into the DNR proceedings, asserting he was "litigating whether he should be allowed to place fill in the outlet stream, not whether the [Respondents] should be held financial[ly] liable for their conduct." Even if this is true, as we have explained, the DNR necessarily made a causation determination—prompted by the fact Munger's whole argument for the permit was premised on the need to repair the damages caused by the Respondents in 2007—that has preclusive effect. Munger has not presented any valid reason for us to question the circuit court's exercise of discretion on the issue of fundamental fairness.

*By the Court.*—Judgments and order affirmed.