**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 31, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP2253**

Cir. Ct. No. 2018ME7

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

IN THE MATTER OF THE MENTAL COMMITMENT OF R. A. S.:

SAUK COUNTY,

    PETITIONER-RESPONDENT,

  V.

R. A. S.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Sauk County: GUY D. REYNOLDS, Judge. *Affirmed*.

¶1 KLOPPENBURG, J.[1] R.A.S. appeals an order involuntarily committing him under WIS. STAT. ch. 51 after a jury trial, arguing that the special verdict question pertaining to dangerousness violated his right to due process because the question did not require five-sixths of the jurors to agree that he was dangerous under WIS. STAT. § 51.20(1)(a)2.c. or that he was dangerous under § 51.20(1)(a)2.d. I affirm.

## BACKGROUND

¶2 On February 2, 2018, Sauk County Deputy Sheriff Mark Babata filed a statement of emergency detention for R.A.S., noting that R.A.S. had a potentially fatal infection for which he was refusing treatment, and that R.A.S. was making threats to hospital staff.

¶3 The circuit court found probable cause for R.A.S.'s involuntary commitment, and R.A.S. requested a jury trial. At trial, before voir dire, R.A.S. asked to be put on notice as to which statutory form of "dangerousness" the County planned to assert against him.[2] The County and R.A.S. agreed that WIS.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted. R.A.S. was involuntarily committed under the statutes in effect at the time of commitment, the 2015-16 statutes. However, since the statutes under which R.A.S. was committed have not changed, we will refer to and cite from the current version.

[2] As explained below, the statute requires a finding that an "individual is dangerous because he or she does any of" five different forms of conduct to support an order of involuntary commitment under WIS. STAT. § ch. 51. WIS. STAT. § 51.20(1)(a)2.a-2.e. For ease of reading, and following the lead of the parties, this opinion generally refers to the statutorily required finding that a person is dangerous as "dangerousness."

The parties also variously refer to WIS. STAT. § 51.20(1)(a)2.a.-e. as "types," "standards," "definitions," "theories," or "methods" of dangerousness. This opinion uses the term "forms" to refer to the statutory descriptions of what an individual must *do* to be found dangerous. *See* § 51.20(1)(a)2. ("The individual is dangerous because he or she *does* any of the following:") (emphasis added).

STAT. § 51.20(1)(a)2.c. and (1)(a)2.d., the "third" and "fourth" statutory forms of dangerousness, were appropriate.[3]  The court agreed that it would instruct the jury at closing regarding the third and fourth statutory forms of dangerousness.

¶4     At trial the jury heard testimony from R.A.S., as well as from an internal medicine physician, a psychologist, a psychiatrist, and an adult protective services worker, all of whom had experience with R.A.S.

¶5     After testimony ended, R.A.S. objected to the special verdict question 2 because it asked the jury only, "Is [R.A.S.] dangerous to himself or others?" but did not further require jurors' agreement as to which of the two statutory forms of dangerousness they found.  R.A.S. asked that "the special verdict contain separate answers to question 2, one for each of the statutory forms of dangerousness, and that … at least five of the jurors be required to agree on one [form of dangerousness] or another."  The circuit court ruled against R.A.S., and the special verdict question 2 asked only whether R.A.S. was a danger to himself or others.  The jury returned a verdict in favor of the County, and the court ordered R.A.S.'s involuntary commitment.

¶6     R.A.S. appeals.

## DISCUSSION

¶7     R.A.S. argues that the special verdict question pertaining to dangerousness violated his right to due process.  Essentially, R.A.S. argues that he has a due process right not to be committed unless five-sixths of the jurors agree

---

[3] This opinion follows the lead of the parties in generally referring to the two forms of dangerousness at issue in this case as the "third" and "fourth" forms.

on one or the other of the two statutory forms of dangerousness. As I explain, I conclude that R.A.S. fails to show that the special verdict deprived him of due process and, therefore, I affirm.

*Standard of Review and Applicable Legal Principles*

¶8      To obtain an involuntary commitment order, the County must "prove by clear and convincing evidence that the individual whose commitment is sought is mentally ill and is a proper subject for treatment, and that the person is dangerous to himself or herself, or others." ***In re Michael H.***, 2014 WI 127, ¶28, 359 Wis. 2d 272, 856 N.W.2d 603; WIS. STAT. § 51.20(1)(a)1.-2. In order to prove dangerousness, the County must prove that the individual does any of five different forms of conduct described in § 51.20(1)(a)2.a.-e.

¶9      As stated, pertinent here are the third and fourth forms of dangerousness. To prove the third form, the County must show that "[t]he individual is dangerous because he or she … [e]vidences such impaired judgment … that there is a substantial probability of physical impairment or injury to himself or herself or other individuals." WIS. STAT. § 51.20(1)(a)2.c. To prove the fourth form, the County must show behavior that evidences

> that, due to mental illness, [the individual] is unable to satisfy the basic needs for nourishment, medical care, shelter, or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness.

§ 51.20(1)(a)2.d.

¶10    Special verdicts must "be prepared by the court in the form of written questions relating only to material issues of ultimate fact and admitting a direct answer." WIS. STAT. § 805.12(1).  "A [circuit] court has wide discretion in framing the special verdict." *Gumz v. N. States Power Co.*, 2006 WI App 165, ¶9, 295 Wis. 2d 600, 721 N.W.2d 515.  This court will not interfere with a special verdict "if the material issues of fact are encompassed within the question asked and appropriate instructions are given." *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 465, 405 N.W.2d 354 (Ct. App. 1987).

¶11    WISCONSIN STAT. § 51.20(11)(a)-(b) provides that where an individual subject to commitment demands a jury trial, the jury is to consist of six jurors, five of whom must agree to the verdict.

¶12    Whether a special verdict deprives an individual of his or her right to due process is a question of law, which this court reviews de novo.  *See State v. Trammell*, 2019 WI 59, ¶16, 387 Wis. 2d 156, 928 N.W.2d 564.

*Pertinent Procedural Facts*

¶13    Over R.A.S.'s objection, the circuit court presented the jury with the special verdict that asked, in pertinent part:

> Question 1:  Is [R.A.S.] mentally ill?
> Answer (Yes or No):_____
>
> Question 2:  If you answered question 1 "yes," then
> answer this question:
> Is [R.A.S.] dangerous to himself or to others?
> Answer (Yes or No):_____
>
> Question 3:  If you answered questions 1 and 2 "yes,"
> then answer this question:
> Is [R.A.S.] a proper subject for treatment?
> Answer (Yes or No) :_____

¶14    The circuit court's jury instructions tracked the pattern jury instructions as laid out in WI JI—Civil 7050 as to the third and fourth forms of dangerousness, and read in pertinent part as follows:

> Question 2 asks:  Is [R.A.S.] dangerous to himself or to others?  A person is dangerous to himself or others if he:
>
> Evidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions that there is substantial probability of physical impairment or injury to himself or other individuals….
>
> Evidences behavior manifested by recent acts or omissions that, due to mental illness, he is unable to satisfy basic needs for nourishment, medical care, shelter, or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will immediately ensue unless he receives prompt and adequate treatment for this mental illness….

¶15    The jury answered "Yes" to each of the three verdict questions, finding that R.A.S. is "mentally ill," a danger to himself or to others, and a proper subject for treatment.  The jury was unanimous on the first and third questions, and one juror dissented on the question of dangerousness.

*Analysis*

¶16    R.A.S. argues that he was denied due process because the special verdict did not require the jury to agree on which form of dangerousness the County proved.[4]  He relies primarily on our supreme court's public policy analysis

---

[4] R.A.S. frames his argument only as a due process violation, not as a violation of his statutory right to a verdict by five-sixths of the jury under WIS. STAT. § 805.09(2).

of the WIS. STAT. § ch.48 statutory scheme in *State v. Aimee M.*, 194 Wis. 2d 282, 533 N.W.2d 812 (1995), to support his argument.  I reject his argument as inconsistent with our supreme court's analysis of the WIS. STAT. § ch.51 statutory scheme in *In re Michael H.*, 2014 WI 127, 359 Wis. 2d 272, 856 N.W.2d 603.

¶17    In *Aimee M.*, three children were alleged to be in need of protection or services (CHIPS) under WIS. STAT. § ch. 48.  *Aimee M.*, 194 Wis. 2d at 288. Our supreme court held that each statutory CHIPS ground is jurisdictional, that the special verdict in a CHIPS case must contain a separate question for each statutory ground alleged, and that the ultimate determination whether the children are in need of protection or services is for the circuit court to make.  *Id.* at 298-301.  In the context of addressing the parties' public policy arguments, the court opined that having a separate and independent question for each statutory ground alleged serves the well-established best interests of the child standard that has been applied in many contexts. *Id.* at 299-300.

¶18    WISCONSIN STAT. § ch. 51 sets forth three statutory grounds that must be found to support an involuntary commitment order:  the individual must be found 1) mentally ill, 2) a proper subject for treatment, and (3) dangerous. *In re Michael H.*, 359 Wis. 2d, ¶28; WIS. STAT. § 51.20(1)(a)1.-2.  Each of these three grounds was included in the special verdict in R.A.S.'s case.

¶19    In *In re Michael H.*, our supreme court analyzed the statutory ground of dangerousness in the context of determining whether evidence at trial was sufficient to support the jury's finding that Michael H. was dangerous within the meaning of WIS. STAT. § 51.20(1)(a)2.a., or 2.c., or both.  *In re Michael H.*, 359 Wis. 2d 272.  The jury had been instructed with WI JI—Civil 7050, which included both forms of dangerousness relevant to the case.  *Id.*, ¶6, n.11.  The

special verdict returned by the jury answered "Yes" to the question asking "Is Michael[] dangerous to himself?" *Id.* The court explained that WIS. STAT. § 51.20 identifies five "ways" the County can meet its burden to prove dangerousness. *Id.*, ¶¶28-29. The court stated that, in Michael's case, dangerousness could be demonstrated by "either recent threats of suicide or serious bodily harm [§ 51.20(1)(a)2.a.]; impaired judgment, evidenced by a pattern of recent acts or omissions [§ 51.20(1)(a)2.c.]; or both." *Id.*, ¶2 (internal quotations and footnotes omitted). R.A.S. fails to explain, consistent with the supreme court's analysis of the dangerousness ground in *In re Michael*, how the various forms of dangerousness at issue in this case are additional statutory grounds that must be separately addressed in the special verdict.

¶20 R.A.S. also argues that the legislature intended that the special verdict include separate questions relating to each form of dangerousness because a finding of dangerousness under WIS. STAT. § 51.20(1)(a)2.e. provides for different treatment than the other four dangerousness forms.[5] *See* § 51.20(13)(g)2d. However, this case does not concern § 51.20(1)(a)2.e., but rather concerns only whether R.A.S. was deprived due process when the circuit court denied his motion requesting that the special verdict ask the jury to agree he was dangerous under § 51.20(1)(a)2.c, or § (a)2.d. R.A.S. does not argue that the special verdict's failure to distinguish whether he was dangerous under the third or

---

[5] WISCONSIN STAT. § 51.20(1)(a)2.e., as aptly summarized by R.A.S., describes the dangerousness of an individual alleged to be drug dependent or developmentally disabled, due to "a substantial probability of loss of ability to function independently or loss of control over thoughts or actions, due to an inability to express or apply an understanding of the advantages, disadvantages and alternatives to medication or treatment."

fourth form resulted in a different treatment order from that intended by the legislature.

¶21     In sum, R.A.S. fails to show that the special verdict deprived him of due process. R.A.S. does not otherwise argue that the special verdict question 2 failed to admit a direct answer or to encompass the material issue of fact (dangerousness), or that appropriate instructions were not given. Accordingly, this court will not interfere with the court's special verdict. *See* ***Ford Motor Co.***, 137 Wis. 2d at 465.

## CONCLUSION

¶22     R.A.S.'s due process challenge to the special verdict form in this case, which asked the jury to answer whether R.A.S. was dangerous to himself or others, fails for the reasons stated. Accordingly, I affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.